UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

RAJNI GANDHI,

                              Plaintiff,

         -against-                               01:20-CV-0120 (LEK)

NEW YORK STATE UNIFIED COURT
SYSTEM, *et al.*,

                            Defendants.

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.     INTRODUCTION

Pro se plaintiff Rajni Gandhi ("Plaintiff") commenced this action on February 4, 2020, alleging state and federal law claims arising from her failure to receive a promotion and the later termination of her employment at the New York State Unified Court System ("UCS"). See Dkt. No. 1. On the same day, Plaintiff also filed an application to proceed in the action in forma pauperis ("IFP"), Dkt. No. 2., and a motion to appoint counsel, Dkt. No. 3. The IFP application was granted. Dkt. No. 6. On March 13, 2020, Magistrate Judge Stewart issued a Report-Recommendation and Order recommending Plaintiff's Title VII, ADEA, and ADA claims against individual defendants, along with her ADA, ADEA, and § 1983 claims against the UCS be dismissed with prejudice. Dkt. No. 7 at 12.[1] The Report-Recommendation and Order further recommended the dismissal of Plaintiff's remaining claims with leave to replead, and the denial of Plaintiff's motion to appoint counsel. <u>Id.</u>

---

[1] For the sake of clarity, citations to all filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

On April 4, 2020, Plaintiff filed her amended complaint. Dkt. No. 10 ("Amended Complaint"). On May 5, 2020, the Court approved Magistrate Judge Stewart's Report-Recommendation and Order in its entirety and deemed the Amended Complaint to be the operative pleading. Dkt. No. 12 at 4. Magistrate Judge Stewart reviewed the Amended Complaint and, on June 24, 2020, issued a new Report-Recommendation and Order. Dkt. No. 14. The new Report-Recommendation and Order recommended that all claims against UCS except for Plaintiff's Title VII claim be dismissed. Id. at 15. It further recommended that Plaintiff's equal protection claim pursuant to the New York State Constitution be dismissed, but allowed all other claims against individual defendants to proceed. Id. at 15–16.

Now before the Court is a motion submitted by Defendant Beth Diebel ("Diebel" or "Defendant"), Dkt. No. 27 ("Motion" or "Motion to Dismiss"), seeking partial dismissal of Plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a cause of action upon which relief may be granted. For the reasons that follow, the Motion to Dismiss is granted in part and denied in part.

## II.    BACKGROUND

The following factual allegations are assumed to be true in evaluating the Motion to Dismiss. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 76 (2d Cir. 2015).

Plaintiff became an employee of the New York State Unified Court System on April 12, 2001 as a Principal Court Office Assistant.[2] Am. Compl. at 4. During the time relevant to this action, Plaintiff's supervisor was Defendant Laureen Lee ("Lee"), the Chief Clerk was Defendant Anthony Mancino ("Mancino"), and the District Executive was Beth Diebel. Id. In late 2016, Plaintiff was diagnosed with cervical spondylosis, stenosis and arthritic degenerative

---

[2] Plaintiff's title was later changed to Senior Court Office Assistant. Am. Compl. at 9.

disc condition. Id. at 6. Plaintiff's neurosurgeon, Dr. David Semenoff, advised that she "refrain

from heavy filing and heavy lifting and opening of heavy drawers." Id. In August 2017, Plaintiff

developed pain while putting away files in her workplace. Id. at 5. Plaintiff informed Lee of her

pain and health conditions, and Lee instructed Plaintiff to seek assistance with filing from

coworkers and to obtain a letter from her doctor. Id. Plaintiff complied with both of these

instructions. Id.

In October 2017, Plaintiff was asked to attend a meeting with Mancino and Diebel,

among others. Id. During the meeting, Plaintiff was "accused of behaving like a supervisor" and

"verbally warned" to stop behaving like a supervisor. Id. Plaintiff explained that she had sought

assistance with filing based on instructions from her supervisor, but was required to sign an

acknowledgment of the verbal warning. Id. Diebel "refused to acknowledge or investigate the

fact that [Plaintiff] was telling the truth" and refused Plaintiff's request that documentation of the

verbal warning be removed from her personnel file. Id.

After the October 2017 meeting, Plaintiff was directed to notify Lee or Mancino when

she needed to retrieve files. Id. Shortly after that time, Plaintiff discovered that the court

managers were keeping a log of the files she asked to retrieve and had directed her co-workers to

do the same. Id. This practice was not applied to any other staff. Id.

Plaintiff is Hindu and travels to India every February for religious purposes, providing

her employer with 4 to 5 months' notice via email to her supervisor, Lee. See id. at 10. When she

submitted her request in September or October of 2017 for time off in February 2018, it was

initially denied, but at the request of a union representative the denial was overruled by the

"downstate Office of Court Administration." Id. Upon Plaintiff's return from her February 2018

trip to India, she was confronted by Defendant Mancino, who stated "I don't care for your religion or spirituality, you are never going to get this kind of time off again." Id.

In May 2018, the position of secretary to the judge became available in the Albany City Court, Criminal Part. Id. at 11. Plaintiff applied and was well qualified for the position, but did not receive an interview. Id. Instead, the position went to a male colleague who had previously worked as a waiter for a restaurant owned by Mancino. Id. Plaintiff alleges that this prior personal relationship resulted in favoritism. Id. She also notes that in the hiring process she was labeled as a "High School Equivalent," despite her bachelor's degree and paralegal certificate, and that she had also applied for several other positions within the court system during her time there and was never promoted despite positive performance evaluations. Id.

In September or October 2018, Plaintiff requested time off for her February 2019 religious trip, but her email to Lee was ignored. Id. at 10. Plaintiff attempted to follow up with Lee verbally, but Lee "looked the other way and quickly walked away." Id. Plaintiff was advised by her union representative to file a grievance, and, after being offered only four days off out of the three weeks requested, she did so. Id. at 11. In December 2018, while Mancino was in the clerks' office, he stopped Plaintiff and asked her "[Do you] go home to pray because [you] want or have to?" Id. The grievance Plaintiff filed received no response. Id.

Also in December 2018, Defendant Mancino directed one of Plaintiff's co-workers to retrieve files requested by Plaintiff. Id. at 5. After Defendant Lee left the office for the day, the co-worker screamed "why do I have to pull files for Rajni Gandhi and no one pulls files for me[.]" Id. The co-worker also told Plaintiff "if you can't pull files maybe you should quit your job." Id.

On December 31, 2018,[3] Plaintiff learned of the death of a family member in India, adding an additional reason for her February 2019 visit. Id. at 10. She informed Lee of the death and Lee responded that she would "check with the main office and get back to" Plaintiff. Id. Plaintiff never received a response, but instead was terminated from her job on January 7, 2019. Id. On that day, Plaintiff was asked by Diebel to attend a meeting at 10:00 AM. Id. at 4. At the meeting, which was also attended by Mancino and Lee as well as a police officer and a union representative, Diebel informed Plaintiff that she was being terminated from her job as a "permanently disabled and incapacitated employee." Id. The union representative promised Plaintiff he would "go after them and do his best to get [her] reinstated." Id. at 4.

Plaintiff's termination was effective immediately. Id. at 6. Following Plaintiff's termination, an Appeal of Termination hearing was scheduled for August of 2019. Id. Plaintiff was informed by her union representative that her termination should have been held in abeyance until after the hearing. Id. The union filed a grievance to this effect in May 2019, but no response was ever received. Id. At the August 2019 hearing, Plaintiff was represented by her union[4] and Plaintiff alleges that the hearing was biased because the "examiner was selected from within the same employer, [she] was not granted an adjournment on [the] basis of illness and vital pieces of evidence were not allowed to be submitted." Id.

## III.   LEGAL STANDARD

---

[3] Plaintiff's Amended Complaint states that Plaintiff learned of the death on December 31, 2019. However, from context and subsequent filings, it is clear that the correct date is December 31, 2018.

[4] In her response to Diebel's Motion to Dismiss, Plaintiff clarifies that while she was represented by her union in the August 2019 proceeding, she has not received such representation in her ongoing proceeding brought under Article 78 of the New York Civil Practice Law and Rules. See Dkt. No. 33 ("Response") at 4.

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV.   DISCUSSION

### A.  Wrongful Termination

Plaintiff alleges that her dismissal amounts to wrongful termination. Am. Compl. at 6. "[A]part from breach of an employment contract, no claim for wrongful termination exists in New York." Rayskin v. City of New York, No. 16-2311, 2018 WL 8201893, at *3 (S.D.N.Y. 2018). Here, Plaintiff alleges breach of contract under her union's Collective Bargaining Agreement ("CBA"), however, "[i]t is well-settled that an employee may maintain a breach of contract action based upon a CBA directly against the employer only if the employee can prove

that the union as bargaining agent breached its duty of fair representation in its handling of the

employee's grievance." Black v. Anheuser-Busch In Bev, 220 F. Supp. 3d 443, 449 (S.D.N.Y.

2016) (quoting Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d 721, 738 (S.D.N.Y.

2005)). Here, by contrast, Plaintiff acknowledges that the union "did not breach their duty as

they represented [her] at the appeal on termination hearing." Dkt. No. 33 ("Response") at 3.

Given that Plaintiff does not even allege that her union breached its duty of fair representation,

Defendant's motion to dismiss is granted with regard to Plaintiff's wrongful termination claim.

### B.  State Law Defamation

Plaintiff alleges that by falsely labeling her "permanently disabled and incapacitated,"

describing her as a "basic file clerk," and accusing her of "acting like a supervisor" both in a

meeting and subsequently in a counseling letter, Diebel violated New York state defamation law.

Am. Compl. at 8–9. "Defamation is 'the making of a false statement which tends to expose the

plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the

minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'"

Cardali v. Slater, 57 N.Y.S.3d 342, 346 (N.Y. Sup. Ct.) (quoting Foster v. Churchill, 665 N.E.2d

153 (1996)). "To prove a claim for defamation, a plaintiff must show: (1) a false statement that is

(2) published to a third party (3) without privilege or authorization, and that (4) causes harm,

unless the statement is one of the types of publications actionable regardless of harm." Stepanov

v. Dow Jones & Co., 987 N.Y.S.2d 37, 41–42 (1st Dept. 2014).

"On a motion to dismiss a defamation claim," before examining the individual elements

of defamation, "the court must decide whether the statements … are reasonably susceptible of a

defamatory connotation, such that the issue is worthy of submission to a jury." Id. at 33 (internal

quotation marks omitted). Here, the labeling of Plaintiff as a "basic file clerk" and the accusation

of her "acting like a supervisor" are not reasonably susceptible of a defamatory connotation. Even if false, these statements do not expose Plaintiff to "contempt, ridicule, aversion or disgrace," Cardali, 57 N.Y.S.3d at 346, nor even to the implication that she was unable to do her job. This leaves Defendant's allegedly false labeling of Plaintiff as "permanently disabled and incapacitated" as the only possible ground for a defamation claim. Defendant argues that, on this ground, Plaintiff has failed to state a state law defamation claim for three reasons: (1) the label of permanently disabled and incapacitated is not defamatory as a matter of law, (2) the label was not made public, and (3) to the extent that the label was shared within the UCS, this sharing was protected by a common interest privilege. See Mot. at 13–14; Dkt. No. 33 ("Reply") at 4–7. The Court addresses each in turn.

First, Defendant argues that the label "permanently disabled and incapacitated" cannot be defamatory as a matter of law because "there is no defamatory meaning attached to statements regarding a person's physical afflictions or disabilities because the afflicted persons 'frequently carry on their personal or professional activities in today's enlightened world in normal fashion and without any deprecatory reflection whatsoever.'" Id. at 5 (quoting Golub v. Enquirer/Star Grp., Inc., 89 N.Y.2d 1074, 1076–77 (N.Y. 1997)). However, the very case that Defendant quotes supports the opposite conclusion. Golub involved a public relations consultant whose cancer diagnosis was made public. Golub, 89 N.Y.2d at 1075. As the Court of Appeals noted, "on a professional level, a defamatory meaning may attach to derogatory statements that would cause apprehension about a person's ability to conduct business." Id. at 1076. Because a cancer diagnosis did "not connote an inability to service her public relations clients," the Golub Court concluded that the published information could not be considered defamatory. Id. at 1077. By contrast, a statement could be defamatory if it "reflect[s] on [the plaintiff's] performance or [is]

8

incompatible with the proper conduct of her business." Id. at 1076. Here, the labeling of Plaintiff as "permanently disabled and incapacitated" both reflects on her ability to perform and is incompatible with the conduct of her business. Unlike a cancer patient, who might continue her job during treatment, an employee who is "incapacitated" cannot, by definition, continue to perform the same type of work. Thus, Defendant's argument is unavailing.

Second, Defendant argues that the "permanently disabled and incapacitated" label was not published. Plaintiff contends that the label was published in two ways: through Plaintiff's own discussions of the cause of her termination with potential employers and others, and through a letter sent by Diebel to the Labor Relations Director and Chief Administrative Judge. See Am. Compl. at 5–6; Resp. at 5. The first of these alleged forms of publication would only be actionable in a state that recognizes the theory of defamation known as "compelled self-publication." Compelled self-publication "generally arises in the employment termination context when, as here, the terminated plaintiff alleges that she is compelled to repeat the defamatory statement in the process of applying for a new job." Parker v. Citizen's Bank, N.A., No. 19-CV-1454, 2019 WL 5569680, at *3 (S.D.N.Y. Oct. 29, 2019). "Although the Court understands the rationale behind this theory, it has been clearly rejected by New York courts." Id. (citing Phillip v. Sterling Home Care, Inc., 103 A.D.3d 786, 787 (2nd Dep't 2013)). As such, Plaintiff's own disclosure of the allegedly false label cannot support a defamation claim.

Diebel's letter to the Labor Relations Director and Chief Administrative Judge, on the other hand, does qualify as publication. Under New York law, "publication" is a "term of art, signifying communication of the defamatory statement to a third party." Penn Warranty Corp. v. DiGiovanni, 810 N.Y.S.2d 807, 814 (Sup. Ct. 2005) (noting that even "a communication to an agent of the person defamed is considered a publication to a third party.") Here, there is no

dispute that Diebel communicated the allegedly defamatory statement to a third party through her letter. As such, the publication requirement is met.

Finally, Defendant argues that Diebel's letter is protected by the common interest privilege. Reply at 5. "Communications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the privilege." D'Allessandro v. City of Albany, No. 04-CV-0788, 2007 WL 9771127, at *21 (N.D.N.Y. July 3, 2007). As such, Diebel's letter may fall within the privilege. However, "[b]ecause the 'common interest' privilege constitutes an affirmative defense, … it does not lend itself to a preanswer motion to dismiss." Demas v. Levitsky, 738 N.Y.S.2d 402, 410 (2002) (internal citations omitted); Menaker v. C.D., No. 17-CV-5840, 2018 WL 5776533, at *6 (E.D.N.Y. Nov. 1, 2018) (quoting Demas and declining to find privilege at the motion to dismiss stage where plaintiff had alleged at least negligence on the part of the publisher). But see Hillel v. Obvio Health USA, Inc., No. 20-CV-4647, 2021 WL 229967, at *10 (S.D.N.Y. 2021) (finding that "a plaintiff must establish, as an element of her claim, that the allegedly defamatory statement is not privileged"). In addressing common interest privilege,  !

> the recognized procedure is to plead the privilege as an affirmative defense and thereafter move for summary judgment on that defense, supporting the motion with competent evidence establishing prima facie that the allegedly defamatory communications were made by one person to another upon a subject in which both have an interest. Upon such a showing, the burden then shifts to the plaintiff to demonstrate that the defendant spoke with malice, either under the common-law or constitutional standard.

Demas, 738 N.Y.S.2d at 410 (international citations and quotation marks omitted). Following this approach, the Court elects to reserve the question of privilege for the summary judgement stage and denies Defendant's motion to dismiss Plaintiff's defamation claim.

### C.  Stigma-Plus

In addition to her state law defamation claim, Plaintiff alleges that Defendant's actions in falsely labeling her as "permanently disabled and incapacitated," combined with termination of Plaintiff's employment amount to a due process violation under a stigma-plus theory. See Am. Compl. at 5–6. Ordinarily, a "person's interest in his or her good reputation … is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause." Patterson v. City of Utica, 370 F.3d 322, 329 (2d Cir. 2004). However, "[l]oss of one's reputation can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment." Id. This is known as a stigma-plus claim. "To prevail on a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks omitted).

Here, Defendant argues that Plaintiff has failed to state a stigma-plus claim for three reasons: (1) the statement in question is insufficiently stigmatizing, (2) the statement was not made public, and (3) Diebel did not, herself, make the statement in question. The Court addresses each argument in turn.

To constitute stigma, a statement must "call into question plaintiff's good name, reputation, honor, or integrity." Patterson, 370 F.3d at 330 (internal quotation marks omitted). Here, it is Plaintiff's reputation at issue. Defendant argues that "[w]here the utterance in question contains no allegations of dishonesty, illegal or immoral conduct, it is not considered stigmatizing." Reply at 16 (citing Wiese v. Kelley, No. 08-CV-6348, 2009 WL 2902513, at *4

11

(S.D.N.Y. Sept. 10, 2009)). Defendant cites numerous cases for the proposition that allegations of unsatisfactory job performance, inefficiency and incompetence, and similar accusations are not stigmatizing as a matter of law. Id. at 16–17 (collecting cases). However, what Defendant fails to note is that "[s]tatements that denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession may also fulfill this requirement." Patterson, 370 F.3d at 330. The distinction at issue is between charges of "derelictions largely within [the employee's] own power to correct," which do not raise a liberty interest, and charges that an employee "can no longer do the job," which are "considerably graver, and carr[y] more potential for future disqualification." Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630–31 (2d Cir. 1996) (internal citations and quotation marks omitted). The latter category of charges, when sufficiently detrimental to a plaintiff's future employment prospects, can implicate liberty interests. See id. Here, Plaintiff alleges that she was falsely labeled as "permanently disabled and incapacitated," a charge which falls squarely into the employee-can-no-longer-do-the-job category, and which is likely to disqualify her from all similar future employment. As such, the statement in question is sufficiently stigmatizing to raise a liberty interest.

Defendant also argues that "Plaintiff makes no allegation whatsoever that Defendant Diebel herself made the purportedly defamatory comment" labeling Plaintiff as "permanently disabled and incapacitated." Mot. at 14. Indeed, in her Amended Complaint, Plaintiff alleges that "The New York State Unified Court System has placed a false label on [her] by calling [her] permanently disabled and incapacitated." Am. Compl. at 8. However, Plaintiff does also allege that Diebel was the person who described her as "permanently disabled and incapacitated," id. at

4, and in her Response, Plaintiff elaborates on Diebel's role in requesting that such a label be applied by UCS, Resp. at 5. Plaintiff also attaches a letter sent from Diebel to the Honorable Michael Coccoma requesting that Plaintiff be terminated "based on her permanent incapacitation." Dkt. No. 33-1 at 1. These allegations, if true, are sufficient to establish Diebel's involvement in both the "stigma" and the "plus" elements of Plaintiff's claim.[5]

Finally, Defendant argues that the label of "permanently disabled and incapacitated" was not made public. Mot. at 14. As described above, Plaintiff contends that the statement was made public in two ways. First, she alleges that Diebel sent a letter to the Labor Relations Director and Chief Administrative Judge stating that Plaintiff was permanently incapacitated. Resp. at 5. While this letter constitutes publication for the purposes of defamation, it does not for the purposes of due process. The letter led to Plaintiff's termination, but it did not add stigma to her termination. Stigma-plus claims apply where the stigmatizing information is published to potential future employers, not where it is internally published within an employer as part of the termination process. See e.g., Koehler v. New York City, No. 04-CV-6929, 2005 WL 3502042, at *3 (S.D.N.Y. Dec. 20, 2005) (holding that plaintiff had failed to allege publication where the plaintiff's name was placed on an internal list making her ineligible for employment anywhere within the defendant agency); McDonald v. Bd. of Educ. of City of New York, No. 01-CV-1991, 2001 WL 840254, at *7 (S.D.N.Y. July 25, 2001) ("[plaintiff] does not allege that the grounds for her dismissal were otherwise published to potential employers.") As such, Diebel's letter cannot support a Stigma-Plus claim.

---

[5] In some cases, "even where a 'stigma' and 'plus' are not imposed by the same actor, a stigma-plus claim may be valid if the 'stigma' and 'plus' were connected." Velez v. Levy, 401 F.3d 75, 89 (2d Cir. 2005).

Secondly, Plaintiff alleges that the "permanently disabled and incapacitated" label became public when Plaintiff discussed the cause of her termination with potential employers and others. Am. Compl. at 5–6; Resp. at 5. Thus, in order to prevail on her claim, Plaintiff would require the Court to recognize compelled self-publication as a basis for relief in the "stigma-plus" context. This, however, is a question of first impression. Walsh v. Suffolk Cty. Police Dep't, 341 F. App'x 674, 675 (2d Cir. 2009) ("We have never decided whether, as a matter of law, so-called 'compelled self-publication' can provide the basis for relief in the 'stigma-plus' context.") As such, the Court is not adequately briefed to decide this question at the motion to dismiss stage. Diebel's motion to dismiss Plaintiff's stigma-plus claim is denied.[6]

### D.  Retaliation Under State Law

Plaintiff alleges that Defendant violated state law by terminating her employment in retaliation for the grievance Plaintiff filed challenging the denial of religious time off. Am. Compl. at 9–10. Retaliation claims under New York State law and under Title VII are "analytically identical" and courts apply "the same standard of proof to both claims." Lenzi v. Systemax, Inc., 944 F.3d 97, 107 (2d Cir. 2019). Under these laws, courts apply the three-part McDonnell Douglas burden-shifting framework. Id. Under this framework the plaintiff must first establish a prima facie case of retaliation. Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013). "Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." Id. at 845. Finally, if the defendant is able to articulate "a non-retaliatory

---

[6] The Court notes that even should all elements of the stigma-plus claim be proven, under procedural due process Plaintiff is merely entitled to a post-deprivation opportunity to clear her name. Patterson, 370 F.3d at 330. The Court expresses no opinion as to whether such process has already been provided.

reason for the employment action, the presumption of retaliation arising from the establishment

of the prima facie case drops from the picture" and the plaintiff must demonstrate by a

preponderance of evidence that the "non-retaliatory reason is a mere pretext for retaliation." Id.

To establish a prima facie case of retaliation the plaintiff must show "(1) participation in a

protected activity; (2) that the defendant knew of the protected activity; (3) an adverse

employment action; and (4) a causal connection between the protected activity and the adverse

employment action." Lenzi, 944 F.3d at 112. To survive a motion to dismiss, Plaintiff need not

establish a prima facie case, Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002), but rather

must comply with the ordinary pleading requirements of Twombly and Iqbal. See Milne v.

Navigant Consulting, No. 08-CV-8964, 2010 WL 4456853, at *5 (S.D.N.Y. Oct. 27, 2010)

(noting that Twombly did not overrule Swierkiewicz).

  Here, Defendant contends that Plaintiff has not pled sufficient facts to establish prongs

(2) and (4) of a prima facie showing, arguing first that Plaintiff has not sufficiently alleged that

Diebel knew of the grievance, and second, that the temporal proximity between the filing and the

termination is not sufficient to demonstrate a causal connection between the filing of the

grievance and Plaintiff's termination. Mot. at 18. In her Amended Complaint, Plaintiff states that

the grievance was filed with her employer mere weeks before she was terminated but does not

allege that Diebel knew of the grievance. See Am. Compl. at 9–11. Thus, "[t]he challenge for

plaintiff is that, while causation can be proven by circumstantial evidence, an 'inference of

knowledge' on the part of the relevant decision-makers is not enough to satisfy the causation

element when there is no actual evidence that anyone with the power to take the alleged adverse

action knew of the protected activity." Milne, 2010 WL 4456853, at *5. In other words, the fact

that Plaintiff was terminated shortly after filing her grievance may be sufficient to satisfy

causation for a prima facie showing, but only if she is able to provide more concrete evidence

that Diebel knew of the grievance. However, that concrete evidence is not yet required.

"[P]laintiff need not fully establish a prima facie case in order to survive a motion to dismiss so

long as she adequately alleges facts that plausibly demonstrate a claim of retaliation." Id. at 6.

The "Second Circuit has said that it is not inappropriate to assume compliance with the

knowledge requirement in certain situations, particularly on a motion to dismiss." Id.

Furthermore, Plaintiff states in her Response "My grievance was sent to [Diebel] by the Union

Representative." Resp. at 9. Thus, while the Court believes "it is a close question as to whether

plaintiff has plausibly alleged she was terminated in response to her" grievance, "it is imprudent

to dismiss her claim at this juncture."[7] Milne, 2010 WL 4456853, at *5.

### E. First Amendment Retaliation

In addition to her retaliation claim under state law, Plaintiff pleads a § 1983 claim

alleging that Defendant retaliated against her for filing her grievance in violation of the First

Amendment. See Am. Compl. at 9–10. "To state a claim for First Amendment retaliation, a

plaintiff must plausibly allege that '(1) h[er] speech or conduct was protected by the First

Amendment; (2) the defendant took an adverse action against h[er]; and (3) there was a causal

connection between this adverse action and the protected speech.'" Stajic v. City of New York,

214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) (quoting Matthews v. City of New York, 779 F.3d

---

[7] Defendant cites several cases for the proposition that "a plaintiff cannot establish causation where only circumstantial evidence of temporal proximity between the protected activity and adverse action is proffered." Mot. at 18. However, these cases all involve § 1983 claims premised on First Amendment violations and are not applicable to Plaintiff's state law claim which is evaluated under a Title VII standard. Similarly, Defendant argues that "[g]rievances that are not filed against a defendant, in most circumstances, will not establish the requisite causal connection between the protected conduct and adverse action as to that defendant." Id. Again, to the extent that it applies at all, this reasoning applies under § 1983 and not Title VII or state law. Plaintiff's §1983 First Amendment claim is discussed infra.

167, 172 (2d Cir. 2015)). Here, Defendant does not address the first two prongs of the test, but argues that Plaintiff has failed to plausibly allege a "causal connection" between the grievance and her termination because Plaintiff has provided only circumstantial evidence and because the grievance was not filed against Diebel. Mot. at 18.

  To support the assertion that mere circumstantial evidence of causation is insufficient, Defendant cites four cases: Faulk v. Fisher, 545 F. App'x 56, 59 (2d Cir. 2013); Williams v. Goord, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000); Roseboro v. Gillespie, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011); and Brown v. Graham, No. 07-CV-1353, 2010 WL 6428251, at *19 (N.D.N.Y. Mar. 30, 2010), report and recommendation adopted, No. 07-1353, 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011), aff'd, 470 F. App'x 11 (2d Cir. 2012). Mot. at 18. However, each of these cases relates to the evidence required to survive a motion for summary judgement, not to the facts that must be pled to survive a motion to dismiss. See, e.g., Faulk, 545 F. App'x at 58 ("while we have held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation, we have consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim") (internal citation omitted). Furthermore, two of the cited cases would not support Defendant's assertion that circumstantial evidence is per se insufficient, even at the summary judgement stage. Roseboro, 791 F. Supp. 2d at 370 ("Direct evidence is not required where circumstantial evidence of a retaliatory motive is sufficiently compelling.") (internal quotations marks omitted); Brown, No. 07-CV-1353, 2010 WL 6428251, at *18 ("Such an inference, flowing from a closeness in proximity between protected activity and the issuance of a misbehavior report, can sometimes suffice to defeat a summary judgment motion seeking dismissal of a retaliation claim.").

At the motion to dismiss stage, "[p]laintiffs may sufficiently plead a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action, . . . and generally, temporal proximity is strong circumstantial evidence of improper intent." Raymond v. City of New York, 317 F. Supp. 3d 746, 773 (S.D.N.Y. 2018) (internal quotation marks omitted). "When a party relies on the mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action, courts uniformly hold that the temporal proximity must be very close." Id. at 773–74. "Courts in this circuit often find[] a limit at two or three months and almost universally disapprove longer time periods." Id. at 774 (internal quotation marks omitted). Here, the grievance was submitted on November 30, 2018, Reply at 12, and Plaintiff's employment was terminated on January 7, 2020, Am. Compl. at 4. As such, the temporal proximity is sufficiently close to provide "strong circumstantial evidence of improper intent." Raymond, 317 F. Supp. 3d at 773.

Defendant also argues that Plaintiff has failed to allege a causal connection because the grievance was not filed against Diebel. Mot. at 18. To support this argument, Defendant cites McFadden v. Friedman, No. 12-CV-0685, 2015 WL 5603433, at *16 (N.D.N.Y., 2015). In McFadden, the plaintiff filed a grievance against one corrections officer and alleged that he later faced retaliation from a second corrections officer. Id. at 10. There, the court granted summary judgement because the defendant officer provided evidence that she was unaware of the grievance, while the plaintiff "provided no evidence establishing why" the second officer would retaliate on behalf of the first except for a "conclusory belief that the two officers are friends." Id. Here, Plaintiff's Amended Complaint describes her grievance only as being filed against her employer, though she implies that it was directed toward Lee, Mancino, and Diebel. Am. Compl. at 9–10. Plaintiff's Response describes the grievance as "filed against Ms. Diebel, Court

Managers, Mancino and Diebel." Resp. at 10. The grievance itself, attached as an exhibit to

Plaintiff's Response, does not mention any individual by name, except in so far as Mancino is

listed as "Grievant's Supervisor." Dkt. No. 33-1 at 11.

The instant case is distinguishable from McFadden, both because McFadden dealt with

evidence at summary judgement rather than allegations on a motion to dismiss, and because here

the grievance was targeted generally rather than against a single individual. To survive summary

judgement, Plaintiff may need to provide evidence establishing why Diebel would retaliate in

response to a grievance not specifically filed against her. However, the Court finds that Plaintiff

has pled sufficient facts to state a plausible claim that Diebel acted in retaliation for Plaintiff's

grievance. As such, Defendant's Motion is denied with regard to Plaintiff's First Amendment

Retaliation claim.

### F. Religious Discrimination

Plaintiff alleges that Defendant discriminated against her on the basis of her Hindu

religion in violation of New York State Human Rights law. Am. Compl. at 11. As Diebel

accurately states in her Motion, to survive a motion to dismiss, a plaintiff "need only allege facts

that plausibly support that the plaintiff is a member of a protected class, was qualified for the

position he held, and suffered an adverse employment action that offers at least minimal support

for the proposition that the employer was motivated by discriminatory intent." Mot. at 20 (citing

Levy v. Legal Aid Soc'y, 408 F. Supp. 3d 209, 214 (E.D.N.Y. 2019) and Littlejohn v. City of

New York, 795 F.3d 297, 312 (2d Cir. 2015)).

In her Motion to Dismiss, Diebel does not challenge Plaintiff's membership in a

protected class nor her qualification for the position she held, rather she argues that "[p]laintiff

has failed to allege any circumstances . . . on which a trier of fact may rely to infer discrimination

on [Diebel's] part." At the motion to dismiss stage, a plaintiff need not provide direct evidence of discrimination. Szewczyk v. City of New York, No. 15-CV-918, 2016 WL 3920216, at *3 (E.D.N.Y. July 14, 2016). Rather, discrimination may be inferred from circumstances including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Littlejohn, 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)). Here, however, while Plaintiff alleges multiple examples of Mancino's implicit and explicit distain for her faith, Plaintiff's provides no similar allegations against Diebel. See Am. Compl. at 10–11. Instead, Plaintiff provides only conclusory statements that Diebel's role in denying requested time off for religious travel demonstrates her intent to discriminate. See Resp. at 10. Because these allegations are insufficient to raise a plausible claim for relief against Diebel, Defendant's motion to dismiss is granted with regard to Plaintiff's claim of religious discrimination. See St . Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 310 (E.D.N.Y. 2014) (finding that "discontinuance of the use of compensatory time by [Muslim] Plaintiff to attend Friday prayers" was insufficient to "support the inference that [Defendant's] conduct was motivated by Plaintiff's religion").

## G.  Equal Protection

Plaintiff brings a claim under § 1983, alleging that when she applied for the position of Secretary to the Judge in the Albany City Court, Criminal Part, Defendant discriminated against her based on her medical disability in violation of the Equal Protection Clause of the Fourteenth Amendment. See Am. Compl. at 11. In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the

injuries suffered." <u>Bass v. Jackson</u>, 790 F.2d 260, 263 (2d Cir. 1986). Here, however, the facts alleged in Plaintiff's Amended Complaint fail to demonstrate Diebel's personal involvement in the alleged discrimination. <u>See Tangreti v. Bachmann</u>, 983 F.3d 609, 618 (2d Cir. 2020). Indeed, while Plaintiff describes Mancino's role as a member of the interview panel, Diebel goes entirely unmentioned. <u>See</u> Am. Compl. at 11. In her Response, Plaintiff seeks to explain Diebel's involvement in the process, but her allegations are entirely speculative or conclusory. For instance, Plaintiff alleges that "if the applications are screened at the main office, [Diebel] would likely have indirect/direct knowledge of my having applied for the position" and that "[c]ertainly, the hiring process would have not been without Ms. Diebel's knowledge regardless of whether she was or was not on the panel." Resp. at 14. Because Plaintiff has failed to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" <u>Iqbal</u>, 556 U.S. at 678, Defendant's motion to dismiss is granted with respect to Plaintiff's equal protection claim.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant Diebel's Motion to Dismiss under 12(b)(6) (Dkt. No. 27) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to Plaintiff's Wrongful Termination, Religious Discrimination, and Equal Protection Claims. The motion is **DENIED** as to Plaintiff's State Law Defamation, Stigma-Plus, and Retaliation claims.

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     September 27, 2021
                Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge