UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RAJNI GANDHI,

                Plaintiff,

    -against-                          01:20-CV-0120 (LEK/DJS)

NEW YORK STATE UNIFIED COURT
SYSTEM, *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Pro se plaintiff Rajni Gandhi ("Plaintiff") commenced this action on February 4, 2020, alleging state and federal law claims arising from her failure to receive a promotion and the later termination of her employment at the New York State Unified Court System ("UCS"). See Dkt. No. 1. On the same day, Plaintiff also filed an application to proceed in the action in forma pauperis ("IFP"), Dkt. No. 2., and a motion to appoint counsel, Dkt. No. 3. The IFP application was granted. Dkt. No. 6. On March 11, 2020, Magistrate Judge Stewart issued a Report-Recommendation and Order recommending Plaintiff's Title VII, ADEA, and ADA claims against individual defendants, along with her ADA, ADEA, and § 1983 claims against the UCS be dismissed with prejudice. Dkt. No. 7 at 12.[1] The Report-Recommendation and Order further recommended the dismissal of Plaintiff's remaining claims with leave to replead, and the denial of Plaintiff's motion to appoint counsel. Id.

---

[1] For the sake of clarity, citations to all filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

On April 4, 2020, Plaintiff filed her amended complaint. Dkt. No. 10 ("Amended Complaint"). On May 5, 2020, the Court approved Magistrate Judge Stewart's Report-Recommendation and Order in its entirety and deemed the Amended Complaint to be the operative pleading. Dkt. No. 12 at 4. Magistrate Judge Stewart reviewed the Amended Complaint and, on June 24, 2020, issued a new Report-Recommendation and Order. Dkt. No. 14. The new Report-Recommendation and Order recommended that all claims against UCS except for Plaintiff's Title VII claim be dismissed. Id. at 15. It further recommended that Plaintiff's equal protection claim pursuant to the New York State Constitution be dismissed, but allowed all other claims against individual defendants to proceed. Id. at 15–16.

Now before the Court is a motion submitted by Defendants Anthony Mancino ("Mancino") and Laureen Lee ("Lee") (collectively "Defendants"), Dkt. No. 38 ("Motion" or "Motion to Dismiss"), seeking partial dismissal of Plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted. For the reasons that follow, the Motion to Dismiss is granted in part and denied in part.

## II.   BACKGROUND

The following factual allegations are assumed to be true in evaluating the Motion to Dismiss. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 76 (2d Cir. 2015).

Plaintiff became an employee of the New York State Unified Court System on April 12, 2001 as a Principal Court Office Assistant.[2] Am. Compl. at 4. During the time relevant to this action, Plaintiff's supervisor was Defendant Laureen Lee, the Chief Clerk was Defendant Anthony Mancino, and the District Executive was Beth Diebel. Id. In late 2016, Plaintiff was diagnosed with cervical spondylosis, stenosis and arthritic degenerative disc condition. Id. at 6.

---

[2] Plaintiff's title was later changed to Senior Court Office Assistant. Am. Compl. at 9.

2

Plaintiff's neurosurgeon, Dr. David Semenoff, advised that she "refrain from heavy filing and heavy lifting and opening of heavy drawers." Id. In August 2017, Plaintiff developed pain while putting away files in her workplace. Id. at 5. Plaintiff informed Lee of her pain and health conditions, and Lee instructed Plaintiff to seek assistance with filing from coworkers and to obtain a letter from her doctor. Id. Plaintiff complied with both of these instructions. Id.

In October 2017, Plaintiff was asked to attend a meeting with Mancino and Diebel, among others. Id. During the meeting, Plaintiff was "accused of behaving like a supervisor" and "verbally warned" to stop behaving like a supervisor. Id. Plaintiff explained that she had sought assistance with filing based on instructions from her supervisor, but was required to sign an acknowledgment of the verbal warning. Id. Diebel "refused to acknowledge or investigate the fact that [Plaintiff] was telling the truth" and refused Plaintiff's request that documentation of the verbal warning be removed from her personnel file. Id.

After the October 2017 meeting, Plaintiff was directed to notify Lee or Mancino when she needed to retrieve files. Id. Shortly after that time, Plaintiff discovered that the court managers were keeping a log of the files she asked to retrieve and had directed her co-workers to do the same. Id. This practice was not applied to any other staff. Id.

Plaintiff is Hindu and travels to India every February for religious purposes, providing her employer with 4 to 5 months' notice via email to Lee. See id. at 10. When she submitted her request in September or October of 2017 for time off in February 2018, it was initially denied, but at the request of a union representative the denial was overruled by the "downstate Office of Court Administration." Id. Upon Plaintiff's return from her February 2018 trip to India, she was confronted by Mancino, who stated "I don't care for your religion or spirituality, you are never going to get this kind of time off again." Id.

3

In May 2018, the position of secretary to the judge became available in the Albany City Court, Criminal Part. Id. at 11. Plaintiff applied and was well qualified for the position, but did not receive an interview. Id. Instead, the position went to a male colleague who had previously worked as a waiter for a restaurant owned by Mancino. Id. Plaintiff alleges that this prior personal relationship resulted in favoritism. Id. She also notes that in the hiring process she was labeled as a "High School Equivalent," despite her bachelor's degree and paralegal certificate, and that she had also applied for several other positions within the court system during her time there and was never promoted despite positive performance evaluations. Id.

In September or October 2018, Plaintiff requested time off for her February 2019 religious trip, but her email to Lee was ignored. Id. at 10. Plaintiff attempted to follow up with Lee verbally, but Lee "looked the other way and quickly walked away." Id. Plaintiff was advised by her union representative to file a grievance, and, after being offered only four days off out of the three weeks requested, she did so. Id. at 11. In December 2018, while Mancino was in the clerks' office, he stopped Plaintiff and asked her "[Do you] go home to pray because [you] want or have to?" Id. The grievance Plaintiff filed received no response. Id.

Also in December 2018, Mancino directed one of Plaintiff's co-workers to retrieve files requested by Plaintiff. Id. at 5. After Lee left the office for the day, the co-worker screamed "why do I have to pull files for Rajni Gandhi and no one pulls files for me[.]" Id. The co-worker also told Plaintiff "if you can't pull files maybe you should quit your job." Id.

On December 31, 2018,[3] Plaintiff learned of the death of a family member in India, adding an additional reason for her February 2019 visit. Id. at 10. She informed Lee of the death

---

[3] Plaintiff's Amended Complaint states that Plaintiff learned of the death on December 31, 2019. However, from context and subsequent filings, it is clear that the correct date is December 31, 2018.

and Lee responded that she would "check with the main office and get back to" Plaintiff. Id.

Plaintiff never received a response, but instead was terminated from her job on January 7, 2019.

Id. On that day, Plaintiff was asked by Diebel to attend a meeting at 10:00 AM. Id. at 4. At the

meeting, which was also attended by Mancino and Lee as well as a police officer and a union

representative, Diebel informed Plaintiff that she was being terminated from her job as a

"permanently disabled and incapacitated employee." Id. The union representative promised

Plaintiff he would "go after them and do his best to get [her] reinstated." Id. at 4.

Plaintiff's termination was effective immediately. Id. at 6. Following Plaintiff's

termination, an Appeal of Termination hearing was scheduled for August of 2019. Id. Plaintiff

was informed by her union representative that her termination should have been held in abeyance

until after the hearing. Id. The union filed a grievance to this effect in May 2019, but no response

was ever received. Id. At the August 2019 hearing, Plaintiff was represented by her union[4] and

Plaintiff alleges that the hearing was biased because the "examiner was selected from within the

same employer, [she] was not granted an adjournment on [the] basis of illness and vital pieces of

evidence were not allowed to be submitted." Id.

## III.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted

---

[4] In her response to Lee and Mancino's Motion to Dismiss, Plaintiff clarifies that while she was represented by her union in the August 2019 proceeding, she did not receive such representation in a subsequent proceeding brought under Article 78 of the New York Civil Practice Law and Rules, nor in this federal court proceeding. See Dkt. No. 44 at 3. The union informed Plaintiff that because she is "no longer a member of Union and nor employed by the New York State Unified Court System" they can no longer represent her. Id. at 4. As such, Plaintiff proceeds in this matter Pro Se.

as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." <u>Twombly</u>, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. <u>Id.</u> at 678–79.

## IV.    DISCUSSION

### A.  Procedural Due Process

Plaintiff alleges that Defendants Mancino and Lee violated her right to procedural due process under the Fourteenth Amendment through their involvement in her termination without a pre-termination hearing. Am. Compl at 6. In reviewing a § 1983 claim for violation of Fourteenth Amendment procedural due process rights, the Court applies a two-step inquiry. <u>Ciambriello v. Cty. of Nassau</u>, 292 F.3d 307, 313 (2d Cir. 2002). First the Court determines whether the plaintiff possessed a liberty or property interest and, if so, determines what process the plaintiff was due before she could be deprived of that interest. <u>Id.</u>

In their Motion to Dismiss, Defendants' sole argument for dismissal is that "Plaintiff failed to allege that she was deprived of any interest by Defendants Mancino or Lee" because her Complaint alleges "only factual allegations suggesting that Defendant Diebel recommended termination of Plaintiff's employment, and such recommendation was subsequently approved by Defendant UCS's Deputy Chief Administrative Judge." Mot. at 11. In their Reply to Plaintiff's Response, Dkt. No. 47 ("Reply"), Defendants further argue that "Plaintiff puts forth only conclusory, speculative and self-serving statements that Defendants Mancino and Lee were involved in the determination to terminate her employment." Id. at 3.

This description, however, does not fully capture Plaintiff's allegations. While Plaintiff does make a number of conclusory statements, such as that both Defendants were "aware of the fact that [she] was going to be terminated[,] were participants in the planning . . . [and] played an instrumental role" in her termination, and that "Defendants . . . initiated a premediated plan… with Defendant Diebel to terminate [Plaintiff]," Dkt. No. 44 ("Response") at 2, Plaintiff also puts forward more concrete allegations that are sufficient to state a plausible claim for relief. In particular, Plaintiff alleges that Mancino and Lee maintained a log of the files Plaintiff asked to retrieve in order to create a pretext for Plaintiff's termination. Am. Compl. at 5. Furthermore, Plaintiff presents circumstantial evidence that Mancino and Lee were involved in her termination. Plaintiff alleges that in late 2018 she requested time off from Lee, Am. Compl. at 9; that Mancino was consulted about the request, Resp at 6; that, after receiving only four days off, Plaintiff filed a grievance, Am. Compl. at 9; and that shortly thereafter on January 7, 2019, Plaintiff's employment was terminated, id. at 10. These alleged facts are sufficient to "raise a reasonable expectation that discovery will reveal evidence" that Defendants Mancino and Lee were directly involved in the termination of Plaintiff's employment. Twombly, 550 U.S. at 556;

7

cf. Campanella v. O'Flynn, No. 10-CV-6236, 2017 WL 3172600, at *10 (W.D.N.Y. July 26, 2017) ("the nature of the defendant's position and the responsibilities it entails may amount to circumstantial evidence that the defendant participated in the adverse employment action"); Osuan v. City of New York, No. 18-CV-0151, 2019 WL 2544866, at *4 (S.D.N.Y. June 20, 2019) (finding that a plaintiff can establish a causal nexus between her filing of a grievance and an adverse employment action "indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment.") As such, Defendants' motion to dismiss Plaintiff's procedural due process claim is denied.

**B.  Wrongful Termination**

Plaintiff alleges that her dismissal amounts to wrongful termination. Am. Compl. at 6. "[A]part from breach of an employment contract, no claim for wrongful termination exists in New York." Rayskin v. City of New York, No. 16-2311, 2018 WL 8201893, at *3 (S.D.N.Y. 2018). Here, Plaintiff alleges breach of contract under her union's Collective Bargaining Agreement ("CBA"), however, "[i]t is well-settled that an employee may maintain a breach of contract action based upon a CBA directly against the employer only if the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." Black v. Anheuser-Busch In Bev, 220 F. Supp. 3d 443, 449 (S.D.N.Y. 2016) (quoting Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d 721, 738 (S.D.N.Y. 2005)). Here, by contrast, Plaintiff acknowledges that she "cannot allege a breach of duty by the Union occurred" and "cannot determine whether there is a breach of duty." Resp. at 4. Given that Plaintiff does not even allege that her union breached its duty of fair representation, Defendant's motion to dismiss is granted with regard to Plaintiff's wrongful termination claim.

**C.  State Law Defamation**

Plaintiff alleges that by falsely labeling her "permanently disabled and incapacitated,"[5] Defendants violated New York state defamation law. Am. Compl. at 8–9. "Defamation is 'the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society'" Cardali v. Slater, 57 N.Y.S.3d 342, 346 (N.Y. Sup. Ct.) (quoting Foster v. Churchill, 665 N.E.2d 153 [1996]). "To prove a claim for defamation, a plaintiff must show: (1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." Stepanov v. Dow Jones & Co., 987 N.Y.S.2d 37, 41–42 (1st Dept. 2014).

Here, Plaintiff has failed to allege that either Lee or Mancino played any role in publishing the allegedly defamatory statement. Liberally construed, Plaintiff's Response argues that Lee and Mancino engaged in a conspiracy with Diebel to defame Plaintiff. Resp. at 6. However, Plaintiff has nowhere alleged that Lee, Mancino, and Diebel formed an agreement to defame her, a necessary element of conspiracy. Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc., No. 18-CV-4921, 2018 WL 8545604, at *9 (S.D.N.Y. Dec. 14, 2018). Finally, even if Plaintiff had alleged sufficient facts to support a claim of conspiracy, her Response emphasizes that this alleged conspiracy harmed her when she revealed the cause of her termination to potential employers and others. Resp. at 6. Such a theory of defamation is known as "compelled self-publication." Compelled self-publication "generally arises in the employment termination

---

[5] In her Response, Plaintiff also alleges that Mancino falsely labeled her a "basic file clerk," while in her Amended Complaint, Plaintiff alleges only that Diebel applied this label. The Court need not address this discrepancy, as the label itself is not "reasonably susceptible of a defamatory connotation." Stepanov v. Dow Jones & Co., 120 A.D.3d 28, 34 (1st Dept. 2014).

context when, as here, the terminated plaintiff alleges that she is compelled to repeat the defamatory statement in the process of applying for a new job." Parker v. Citizen's Bank, N.A., No. 19-CV-1454, 2019 WL 5569680, at *3 (S.D.N.Y. Oct. 29, 2019). "Although the Court understands the rationale behind this theory, it has been clearly rejected by New York courts." Id. (citing Phillip v. Sterling Home Care, Inc., 103 A.D.3d 786, 787 (2nd Dep't 2013)). As such, Defendant's motion to dismiss Plaintiff's defamation claim is granted.

### D.  Stigma Plus

In addition to her state law defamation claim, Plaintiff alleges that Defendants' actions in falsely labeling her as "permanently disabled and incapacitated," combined with termination of her employment amount to a due process violation under a stigma-plus theory. See Am. Compl. at 5–6. Ordinarily, a "person's interest in his or her good reputation … is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause." Patterson v. City of Utica, 370 F.3d 322, 329 (2d Cir.2004). However, "[l]oss of one's reputation can ... invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment." Id. "To prevail on a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks omitted).

Here, Defendants argue that Plaintiff has failed to state a stigma-plus claim for three reasons: (1) the statement in question is insufficiently stigmatizing, (2) the statement was not made public, and (3) Defendants Mancino and Lee did not, themselves, make the statement in question. The Court addresses each argument in turn.

10

To constitute stigma, a statement must "call into question plaintiff's good name, reputation, honor, or integrity." Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004) (internal quotation marks omitted). Here, it is Plaintiff's reputation at issue. Defendants argue that "[w]here the utterance in question contains no allegations of dishonesty, illegal or immoral conduct, it is not considered stigmatizing." Mot. at 14 (citing Wiese v. Kelley, No. 08-CV-6348, 2009 WL 2902513, at *4 (S.D.N.Y. Sept. 10, 2009)). Defendants cite numerous cases for the proposition that allegations of unsatisfactory job performance, inefficiency and incompetence, and similar accusations are not stigmatizing as a matter of law. Id. at 14–15 (collecting cases). However, what Defendants fail to note is that "[s]tatements that denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession may also fulfill this requirement." Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004). The distinction at issue is between charges of "derelictions largely within [the employee's] own power to correct," which do not raise a liberty interest, and charges that an employee "can no longer do the job," which are "considerably graver, and carr[y] more potential for future disqualification." Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630–31 (2d Cir. 1996) (internal citations and quotation marks omitted). The latter category of charges, when sufficiently detrimental to a plaintiff's future employment prospects, can implicate liberty interests. See id. Here, Plaintiff alleges that she was falsely labeled as "permanently disabled and incapacitated," a charge which squarely falls into the employee-can-no-longer-do-the-job category, and which is likely to disqualify her from all similar future employment. As such, the statement in question is sufficiently stigmatizing to raise a liberty interest.

11

Defendants also argue that the statement in question was not made public. As described above in regard to Plaintiff's defamation claim, Plaintiff's complaint and subsequent briefing make clear that the "permanently disabled and incapacitated" label has become public, not through Defendants direct actions, but because Plaintiff has discussed the cause of her termination with potential employers and others. Thus, in order to prevail on her claim, Plaintiff would require the court to accept that compelled self-publication can provide the basis for relief in a "stigma-plus" context. This, however, is a question of first impression. Walsh v. Suffolk Cty. Police Dep't, 341 F. App'x 674, 675 (2d Cir. 2009) ("We have never decided whether, as a matter of law, so-called 'compelled self-publication' can provide the basis for relief in the 'stigma-plus' context.") As such, the Court will not decide it on a Motion to Dismiss.

Finally, Defendants argue that Plaintiff has failed to even allege that Mancino and Lee made any statement labeling her as "permanently disabled and incapacitated." Mot. at 14. Indeed, in her Amended Complaint, Plaintiff alleges only that "The New York State Unified Court System has placed a false label on [her] by calling [her] permanently disabled and incapacitated." Am. Compl. at 8. In her Response, Plaintiff does make a passing and conclusory reference to Diebel, Mancino, and Lee having "falsely label[ed her] as an incapacitated person," but provides no explanation of Mancino and Lee's role in creating this label. Resp. at 8. Instead, Plaintiff has alleged that Mancino and Lee helped to create a pretext for terminating her employment and imposing a stigma on her. Courts will dismiss a stigma plus claim where "plaintiffs have not pleaded any facts to show that . . . defendants made any allegedly stigmatizing statements or were involved in any stigmatizing statements." Bertuglia v. City of New York, 839 F. Supp. 2d 703, 725 (S.D.N.Y. 2012). Thus, the question for the Court is whether Plaintiff has alleged that Mancino and Lee were sufficiently involved in producing the

12

allegedly stigmatizing label and the "plus" of termination to face liability. Here the Court finds that Plaintiff has pled sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of" Mancino and Lee's involvement in Plaintiff's firing and labeling as permanently disabled and incapacitated. Twombly, 550 U.S. at 556. As such, the Court will allow Plaintiff's claim to proceed at this time.[6]

### E.  Retaliation Under State Law

Plaintiff alleges that Defendants violated state law by terminating her employment in retaliation for the grievance Plaintiff filed challenging the denial of religious time off. Am. Compl. at 9–10. Retaliation claims under New York State law and under Title VII are "analytically identical" and courts apply "the same standard of proof to both claims." Lenzi v. Systemax, Inc., 944 F.3d 97, 107 (2d Cir. 2019). Under these laws, courts apply the three-part McDonnell Douglas burden-shifting framework. Id. Under this framework the plaintiff must first establish a prima facie case of retaliation. Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013). "Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." Id. at 845. Finally, if the defendant is able to articulate "a non-retaliatory reason for the employment action, the presumption of retaliation arising from the establishment of the prima facie case drops from the picture" and the plaintiff must demonstrate by a preponderance of evidence that the "non-retaliatory reason is a mere pretext for retaliation." Id. To establish a prima facie case of retaliation the plaintiff must show "(1) participation in a

---

[6] The Court notes that even should all elements of the stigma-plus claim be proven, under procedural due process Plaintiff is merely entitled to a post-deprivation opportunity to clear her name. Patterson, 370 F.3d at 330. The Court expresses no opinion as to whether such process has already been provided.

protected activity; (2) that the defendant knew of the protected activity; (3) an adverse

employment action; and (4) a causal connection between the protected activity and the adverse

employment action." <u>Lenzi</u>, 944 F.3d at 112. To survive a motion to dismiss, Plaintiff need not

establish a prima facie case, <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 508 (2002), but rather

must comply with the ordinary pleading requirements of <u>Twombly</u> and <u>Iqbal</u>. <u>See</u> <u>Milne v.

Navigant Consulting</u>, No. 08-CV-8964, 2010 WL 4456853, at *5 (S.D.N.Y. Oct. 27, 2010)

(noting that <u>Twombly</u> did not overrule <u>Swierkiewicz</u>).

Here, Defendants contend that Plaintiff has not pled sufficient facts to establish prongs

(2) and (4) of a prima facie showing,[7] arguing first that Plaintiff has not sufficiently alleged that

Lee and Mancino knew of the grievance, and second, that the temporal proximity between the

filing and the termination is not sufficient to demonstrate a causal connection between the filing

of the grievance and Plaintiff's termination. Mot. at 16. In her Amended Complaint, Plaintiff

states that the grievance was filed with her employer mere weeks before she was terminated but

does not allege that Defendants knew of the grievance. <u>See</u> Am. Compl. at 9–11. Thus, "[t]he

challenge for plaintiff is that, while causation can be proven by circumstantial evidence, an

'inference of knowledge' on the part of the relevant decision-makers is not enough to satisfy the

causation element when there is no actual evidence that anyone with the power to take the

alleged adverse action knew of the protected activity." <u>Milne</u>, 2010 WL 4456853, at *5. In other

words, the fact that Plaintiff was terminated shortly after filing her grievance may be sufficient to

---

[7] Defendants also argue that "[i]nsofar as Plaintiff claims that submission of her leave request in November of 2017 constituted the protected activity," she has failed to sufficiently allege that she participated in a protected activity. Reply at 7. However, the alleged protected activity is Plaintiff's filing of a grievance, not her leave request. As Defendants make no argument that filing of the grievance was not a protected activity, the Court does not address the issue.

satisfy causation for a prima facie showing, but only if she is able to provide more concrete

evidence that Defendants knew of the grievance. However, that concrete evidence is not yet

required. "[P]laintiff need not fully establish a prima facie case in order to survive a motion to

dismiss so long as she adequately alleges facts that plausibly demonstrate a claim of retaliation."

Id. at 6. The "Second Circuit has said that it is not inappropriate to assume compliance with the

knowledge requirement in certain situations, particularly on a motion to dismiss." Id. Defendants

were the individuals whose decision was challenged in the grievance, see Compl. at 9; Resp at 6,

and Mancino was listed in Plaintiff's grievance, if only as her supervisor, Mot. at 19. Thus, while

the Court believes "it is a close question as to whether plaintiff has plausibly alleged she was

terminated in response to her" grievance, and Plaintiff will need to provide additional evidence

in order to make out a prima facie case, "it is imprudent to dismiss her claim at this juncture."[8]

Milne, 2010 WL 4456853, at *5.

### F.  First Amendment Retaliation

In addition to her retaliation claim under state law, Plaintiff pleads a § 1983 claim

alleging that Defendant retaliated against her for filing her grievance in violation of the First

Amendment. See Am. Compl. at 9–10. "To state a claim for First Amendment retaliation, a

plaintiff must plausibly allege that '(1) h[er] speech or conduct was protected by the First

Amendment; (2) the defendant took an adverse action against h[er]; and (3) there was a causal

---

[8] Defendant cites several cases for the proposition that "a plaintiff cannot establish causation where only circumstantial evidence of temporal proximity between the protected activity and adverse action is proffered." Mot. at 18. However, these cases all involve § 1983 claims premised on First Amendment violations and are not applicable to Plaintiff's state law claim which is evaluated under a Title VII standard. Similarly, Defendant argues that "[g]rievances that are not filed against a defendant, in most circumstances, will not establish the requisite causal connection between the protected conduct and adverse action as to that defendant." Id. Again, to the extent that it applies at all, this reasoning applies under § 1983 and not Title VII or state law. Plaintiff's §1983 First Amendment claim is discussed infra.

connection between this adverse action and the protected speech.'" <u>Stajic v. City of New York</u>, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) (quoting <u>Matthews v. City of New York</u>, 779 F.3d 167, 172 (2d Cir. 2015)).

As Defendants note in their reply, "[w]hen a public employee's speech is focused on personal matters, it is not considered to be a matter of public concern and the government, acting as an employer, has wide latitude to manage the office." Reply at 5 (quoting <u>Isaac v. City of New York</u>, 701 F. Supp. 2d 477, 495 (S.D.N.Y. 2010) (internal quotation marks omitted). Indeed, "[f]or public employees, speech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection." <u>Agosto v. New York City Dep't of Educ.</u>, 982 F.3d 86, 95 (2d Cir. 2020) (internal quotation marks omitted). Furthermore, a "petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." <u>Id.</u> That is the case here. Plaintiff's filing of an internal grievance relating to her time off, even if concerning discrimination on the basis of religion, was calculated to redress a personal grievance and not to communicate to the public. As such, Plaintiff's First Amendment Retaliation claim is dismissed.

### G.  Religious Discrimination

Plaintiff alleges that Defendants discriminated against her on the basis of her Hindu religion in violation of New York State Human Rights law. Am. Compl. at 11. As Defendants accurately state in their Motion, to survive a motion to dismiss, a plaintiff "need only allege facts that plausibly support that the plaintiff is a member of a protected class, was qualified for the position he held, and suffered an adverse employment action that offers at least minimal support

for the proposition that the employer was motivated by discriminatory intent." Mot. at 20 (citing Levy v. Legal Aid Soc'y, 408 F. Supp. 3d 209, 214 (E.D.N.Y. 2019) and Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015)).

In their Motion to Dismiss, Defendants do not challenge Plaintiff's membership in a protected class nor her qualification for the position she held, rather they argue first, that "[p]laintiff has failed to allege that Lee and Mancino participated in the determination by defendant UCS to terminate Plaintiff," and second, that "with regard to Lee, Plaintiff has failed to allege any circumstances . . . on which a trier of fact may rely to infer discrimination on her part." The first of these arguments is unavailing. As described supra IV(a), Plaintiff's allegations regarding Lee and Mancino's involvement in Plaintiff's termination are sufficient to survive a motion to dismiss. Defendants' second argument, however, is more persuasive. At the motion to dismiss stage, a plaintiff need not provide direct evidence of discrimination. Szewczyk v. City of New York, No. 15-CV-918, 2016 WL 3920216, at *3 (E.D.N.Y. July 14, 2016). Rather, discrimination may be inferred from circumstances including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Littlejohn, 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)). Here, however, while Plaintiff alleges multiple examples of Mancino's implicit and explicit distain for her faith, Plaintiff provides no similar allegations against Lee. See Am. Compl. at 10. Instead, Plaintiff provides only conclusory statements that Lee's role in ignoring or denying requested time off for religious travel demonstrates her intent to discriminate. Resp. at 12–13. Defendant's motion to dismiss is granted with regard to Plaintiff's claim of religious discrimination against

Lee. See St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 310 (E.D.N.Y. 2014) (finding

that "discontinuance of the use of compensatory time by [Muslim] Plaintiff to attend Friday

prayers" was insufficient to "support the inference that [Defendant's] conduct was motivated by

Plaintiff's religion"). However, the motion is denied with regard to Plaintiff's claim of religious

discrimination against Mancino.

### H.  Equal Protection

Plaintiff brings a claim under § 1983, alleging that when she applied for the position of

Secretary to the Judge in the Albany City Court, Criminal Part, Defendants discriminated against

her based on her medical disability in violation of the Equal Protection Clause of the Fourteenth

Amendment. See Am. Compl. at 11. However, the facts alleged in Plaintiff's Amended

Complaint tend to show not actionable discrimination, but rather favoritism based on personal

connection. Plaintiff alleges that the person ultimately hired for the position, "[her] colleague,

who is a male with no legal secretary experience or education as a legal secretary" had

previously worked as a waiter in a restaurant owned by Mancino and this "prior personal

relationship … resulted in … favoritism." Id. In her subsequent response, Plaintiff doubled down

on this explanation, stating: "A colleague who wishes to remain anonymous informed me that it

was a done deal that my colleague, a male in his thirties, much younger than me and former

employee and friend of Defendants Lee and Mancino would be hired for the position." Resp. at

11.

To be actionable under the Equal Protection Clause of the Fourteenth Amendment,

discrimination in public employment must be based on "membership in some class or group."

Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 607 (2008). Where a plaintiff merely argues

that she is a "class-of-one" and has been "treated by [her] employers worse than other employees

18

similarly situated," id. at 607–08, courts will not intervene to "constitutionalize the employee grievance," id. at 609 (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 154 (1983)). As such, Plaintiff's allegation of discrimination in hiring for the position of Secretary to the Judge in the Albany City Court, Criminal Part, is insufficient to state a claim on which relief may be granted. Plaintiff's other assertions, including that she had "applied for several other positions with the court system over the years" and was never promoted despite "having positive performance evaluations and going above and beyond in performance" lack "sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). As such, Defendants' motion to dismiss is granted with respect to Plaintiff's equal protection claim.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss under 12(b)(6) (Dkt. No. 38) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to Plaintiff's Wrongful Termination, Equal Protection, State Law Defamation, and First Amendment Retaliation Claims. It is also **GRANTED** as to Plaintiff's Religious Discrimination Claim against Lee. The motion is **DENIED** as to Plaintiff's Procedural Due Process, Stigma-Plus, and State Law Retaliation claims. It is also **DENIED** as to Plaintiff's Religious Discrimination Claim against Mancino.

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      October 25, 2021
            Albany, New York


Lawrence E. Kahn
Senior U.S. District Judge