UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RAJNI GANDHI,

                            Plaintiff,

   -against-                                              1:20-CV-120 (LEK)

NEW YORK STATE UNIFIED COURT
SYSTEM, *et al.*,

                            Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

       Plaintiff Rajni Gandhi commenced this pro se action on February 4, 2022, against New York State Unified Court System ("UCS"), Anthony Mancino ("Mancino"), Lauren Lee ("Lee"), and Beth Diebel ("Diebel") (collectively, "Defendants"), alleging federal and state law claims arising from Plaintiff's employment and termination at UCS. See Dkt. No. 1. Defendants now move for summary judgment, Dkt. No. 125-10 ("Motion"), and have provided a statement of material facts, Dkt. No. 125-9 ("Statement of Material Facts" or "SMF"). Plaintiff has filed a response, Dkt. No 128 ("Response"), and a response to the Statement of Material Facts, Dkt. No. 128-1 ("Response to Statement of Material Facts" or "RSMF"). Defendants have filed a reply. Dkt. No. 129.

       For the reasons that follow, Defendants' motion is granted in part and denied in part.

**II.    BACKGROUND**

       Plaintiff's factual allegations are detailed in this Court's 2021 memorandum-decisions. Dkt. No. 50 ("September 2021 MDO") at 2–5; Dkt. No. 56 ("October 2021 MDO") at 2–5.

1

This Court dismissed several of Plaintiff's claims against Diebel, Lee, and Mancino (collectively, the "Individual Defendants") in the September 2021 MDO and October 2021 MDO. Prior to those decisions, the Honorable Daniel J. Stewart, United States Magistrate Judge, issued a report-recommendation recommending dismissal of all but one claim against UCS, Dkt. No. 14, which this Court adopted, Dkt. No. 15 ("September 2020 MDO"). Presently, eight claims remain, four of which exist under federal law: (1) constitutional procedural due process against the Individual Defendants; (2) stigma-plus against the Individual Defendants; (3) retaliation under the First Amendment against Diebel; and (4) Title VII discrimination against UCS. See Sep. 2020 MDO at 5; Sep. 2021 MDO at 19; Oct. 2021 MDO at 21. Four of Plaintiff's claims fall under state law: (1) disability discrimination and retaliation under New York State Human Rights Law ("HRL") against the Individual Defendants; (2) religious discrimination under HRL against Mancino; (3) retaliation under HRL against the Individual Defendants; and (4) defamation/slander against Diebel. See Sep. 2021 MDO at 19; Oct. 2021 MDO at 21. Defendants now move for summary judgment on all claims. See Mot.

### III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see

also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation or conjecture, Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S 133, 150 (2000), and must "eschew credibility assessments[,]" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

**IV.     DISCUSSION**

Defendants move for summary judgment on all of Plaintiff's claims. See Mot. The Court addresses each of Defendants' arguments in the order presented in the Motion.

### A. HRL Claims

Defendants first argue that all of Plaintiff's claims under HRL must be dismissed pursuant to a provision in HRL, N.Y. Exec. Law § 297 ("Section 297"), which deprives this Court of subject matter jurisdiction. Mot. at 9. Those claims include Plaintiff's state law claims of (1) disability discrimination and retaliation against the Individual Defendants; (2) religious discrimination against Mancino; and (3) retaliation against the Individual Defendants.

Section 297(9) relevantly states:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

In other words, "a litigant who files a claim with the NYSDHR [New York State Division of Human Rights] cannot bring the same claim in federal court." Waller v. Muchnick, Golieb & Golieb, P.C., 523 F. App'x 55, 56 n.1 (2d Cir. 2013); see also Legg v. Eastman Kodak Co., 248 A.D.2d 936, 937, 670 N.Y.S.2d 291 (4th Dept. 1998) ("Once a complainant elects the administrative forum by filing a complaint with the [New York State Division of Human Rights], a subsequent judicial action on the same complaint is generally barred."). To determine whether the "same claim" has been filed in both federal court and the New York State Division of Human Rights ("NYSDHR"), courts look to see if a "sufficient identity of issue exists between a complaint before the agency and a complaint before the Court." Smith-Henze v. Edwin Gould Servs. for Child. & Fams., Officers & Emps., No. 06-CV-3049, 2006 WL 3771092, at *4 (S.D.N.Y. Dec. 21, 2006).

4

Section 297(9) directly applies to Plaintiff's claims under HRL. Both Plaintiff and Defendants agree that on January 11, 2019, Plaintiff filed a complaint with NYSDHR that charged "UCS with unlawful discriminatory practice relating to employment because of disability, creed, opposed discrimination/retaliation and age." SMF ¶ 131; see also RSMF ¶ 131. NYSDHR ultimately dismissed the complaint on the merits. See SMF ¶ 134; RSMF ¶ 134.

The Court notes that Plaintiff's NYSDHR complaint appears not to have named the Individual Defendants as respondents, but rather named UCS as the respondent. See SMF ¶ 131 (stating that Plaintiff's complaint charged only UCS). This, however, does not save Plaintiff from Section 297(9). Courts have recognized that where a plaintiff did not include specific defendants in an NYSDHR charge, but the claims are nevertheless "based on the same facts and incidents raised in the [NYSDHR] charge" and "the incidents are incidental," a court must still dismiss the claim under Section 297(9). Benson v. N. Shore-Long Island Jewish Health Sys., 482 F. Supp. 2d 320, 326 (E.D.N.Y. 2007) (dismissing a claim where several defendants "were not named as respondents in the Plaintiff's administrative charge," yet finding "the Court still lacks jurisdiction"); see also Lyman v. City of New York, No. 96-CV-2382, 1997 WL 473976, at *4 (S.D.N.Y. Aug. 20, 1997) ("The facts that Mazer was not named in the [NYSDHR] complaint and that the complaint before this Court includes factual allegations not included in the [NYSDHR] complaint do not change this result, because the present claims are based on the same facts as the claims raised in the [NYSDHR] complaint"). Here, the claims alleged by Plaintiff in her NYSDHR complaint are based on the same factual predicate as the instant HRL claims. Compare SMF ¶ 131, with Dkt. No. 10 ("Amended Complaint") at 4–5.

The Court further notes that the precise claims in the NYSDHR complaint are not wholly identical to the claims Plaintiff alleges in this action. Compare SMF ¶ 131, with Am. Compl. at

5

6–11. However, this still does not save Plaintiff, as courts have recognized that "[m]erely adding a legal theory for liability on the same underlying claim does not suffice to overcome the bar." Smith-Henze, 2006 WL 3771092, at *4.

Accordingly, the following claims are dismissed under Section 297(9) for lack of subject matter jurisdiction: (1) disability discrimination and retaliation against the Individual Defendants; (2) religious discrimination against Mancino; and (3) retaliation against the Individual Defendants.

### B. Defamation/Slander Claim

Defendants next argue that summary judgment must be granted with respect to Plaintiff's defamation/slander claim against Diebel. Mot. at 10–15.

In its September 2021 MDO, the Court found that the only means by which Plaintiff could sustain a defamation claim was through Diebel's December 26, 2018, letter to an administrative judge ("Administrative Judge Letter") recommending that Plaintiff be terminated and describing Plaintiff as "permanently disabled and incapacitated." Sept. 2021 MDO at 9. The Court noted that under state law, there exists a "common interest privilege" in which "[c]ommunications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the privilege." Id. at 10 (citing D'Allessandro v. City of Albany, No. 04-CV-0788, 2007 WL 9771127, at *21 (N.D.N.Y. July 3, 2007)). The Court found, however, that invoking that privilege was inappropriate at the motion to dismiss stage, and instead "elect[ed] to reserve the question of privilege for the summary judgement stage." Id.

With the common interest privilege now ripe for adjudication, the Court reviews the

privilege's applicability. "The [common interest] privilege creates a rebuttable presumption of good faith that constitutes a complete defense to defamation." Hussey v. N.Y. State Dep't of Law/Office of Atty. Gen., 933 F.Supp.2d 399, 414 (E.D.N.Y.2013) (citing Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 62 (2d Cir.1993)). The common interest privilege "only may be rebutted by evidence of 'malice on the part of their superiors.'" Ibraheem v. Wackenhut Servs., Inc., 29 F. Supp. 3d 196, 217 (E.D.N.Y. 2014) (citing Shamley v. ITT Corp., 869 F.2d 167, 173 (2d Cir. 1989)). Here, both parties agree that the administrative judge and Diebel acted in a working relationship. See SMF ¶ 5 ("As a District Executive, Diebel worked with the Administrative Judge to oversee the administration and implementation of policies for the court system within the Third Judicial District."); RSMF ¶ 5. And courts in this circuit have routinely found that discussions between co-workers regarding an employee's underperformance are protected from defamation claims under the common interest privilege. See, e.g., Ibraheem, 29 F. Supp. 3d at 217 (dismissing a defamation claim where one supervisor told another supervisor that the plaintiff "was sleeping on the job"); Hussey, 933 F. Supp. 2d at 404, 414 (dismissing a defamation claim under the common interest privilege where defendant supervisors prepared a memorandum alleging that "plaintiff had been stealing time").

      Plaintiff's best case for defeating the privilege is the argument that the Administrative Judge Letter was a product of malice. "A party alleging defamation can overcome the common interest privilege by showing that the defamatory statement was made with either common law or constitutional malice." Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009). "Common-law malice means spite or ill will, and will defeat the privilege only if it is the one and only cause for the publication," while "[c]onstitutional or actual malice means publication with a high degree of awareness of the publication's probable falsity or while the

7

defendant in fact entertained serious doubts as to the truth of the publication." Id. (cleaned-up). Here, Plaintiff has not provided sufficient evidence to meet either the common-law or constitutional malice standards. With regards to common-law malice, Plaintiff does not anywhere allege that the Administrative Judge Letter was solely the product of "spite or ill will," id. See generally Am. Compl.; Resp.; RSMF. In her Response to the Statement of Material Facts, for example, Plaintiff argues that the letter was inaccurate, but does not suggest that Diebel filed the letter purely out of spite. RSMF ¶¶ 65–72. Furthermore, with respect to constitutional malice, there is no evidence to suggest that "high degree of awareness of the publication's probable falsity or while the defendant in fact entertained serious doubts as to the truth of the publication," Fuji Photo Film U.S.A, 669 F. Supp. 2d at 412. While Plaintiff alleges that certain aspects of the Administrative Judge Letter were false, see RSMF ¶ 69, nowhere does Plaintiff allege or provide evidence that Diebel deliberately knew of the letter's falsity. See generally Am. Compl.; Resp.; RSMF. It is therefore apparent that Plaintiff has not provided the requisite factual predicate to support a finding of malice.

Given that Plaintiff has not showed malice, Plaintiff is unable to defeat the common interest privilege. As such, the Court finds the privilege protects Diebel's Administrative Judge Letter. The Court therefore grants summary judgment in favor of Diebel on the defamation claim.

**C. Stigma-Plus**

Defendants next argue that Plaintiff's stigma-plus claim against the Individual Defendants must be dismissed "because Plaintiff has already been granted a post-deprivation name-clearing hearing and, thus, she has been given all the remedy that she would be entitled to if she prevailed here." Mot. at 14. Specifically, Defendants argue that Plaintiff had the

8

opportunity to refute the allegedly stigmatizing statement—i.e., that Defendants falsely labeled Plaintiff as "permanently disabled and incapacitated," see Sept. 2021 MDO at 11—in a post-termination hearing. Mot. at 13. That Plaintiff had such an opportunity, Defendants contend, alone defeats her stigma-plus claim. Id.

New York law provides that "state employees may appeal adverse employment determinations made by their employers pursuant to an Article 78 proceeding in state court." Paterno v. City of New York, No. 17-CV-8278, 2018 WL 3632526, at *6 (S.D.N.Y. July 31, 2018) (citing N.Y. CPLR 7801, *et seq*.), aff'd, 781 F. App'x 15 (2d Cir. 2019). "'An Article 78 proceeding provides the requisite post-deprivation process' for a 'stigma-plus' claim." Id. (quoting Anemone v. Metro. Transp. Auth., 629 F.3d 97, 121 (2d Cir. 2011)). In other words, if a government employee has the opportunity to pursue an Article 78 proceeding—regardless of whether the employee actually took advantage of that opportunity—that is enough to defeat a stigma-plus claim. See Guerra v. Jones, 421 F. App'x 15, 19 (2d Cir. 2011) ("For an at-will government employee . . . an Article 78 hearing provides the requisite post-deprivation process—even if Guerra failed to pursue it. We therefore affirm the grant of summary judgment on Guerra's stigma-plus claims." (cleaned-up)).

Here, Plaintiff not only had the opportunity to undertake an Article 78 proceeding, but did in fact pursue such a proceeding. Both Plaintiff and Defendants concur that on November 10, 2020, "Plaintiff commenced an Article 78 proceeding against UCS, Diebel, Mancino, Lee and Hearing Officer Nicolas-Brewster, in the Albany County Supreme Court." SMF ¶ 113; see also RSMF ¶ 113. Given that "courts have consistently held that Article 78 proceedings provide sufficient procedural protection as post-deprivation name-clearing hearings," Spang v. Katonah-

9

Lewisboro Union Free Sch. Dist., 626 F. Supp. 2d 389, 397 (S.D.N.Y. 2009), the Court must therefore grant summary judgment in favor of Defendants and dismiss the stigma-plus claim.

### D. First Amendment Retaliation

Defendants next turn to Plaintiff's First Amendment Retaliation claim against Diebel, arguing that Plaintiff has failed to meet each of the prima facie elements of such a claim. Mot. at 19.

A public employee "pursuing a claim for First Amendment retaliation must demonstrate that '(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination.'" Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004) (quoting Mandell v. County of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003)). With regards to the first element, the speech "must have been made as a citizen on matters of public concern rather than as an employee on matters of personal interest"—meaning that a plaintiff's statements cannot have been "uttered for any other reason than to protect [a plaintiff's] own rights or to air his personal grievances." Grillo v. New York City Transit Auth., 291 F.3d 231, 235–36 (2d Cir. 2002). As the Supreme Court has recognized,

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Connick v. Myers, 461 U.S. 138, 147 (1983).

Here, Plaintiff cannot meet the first element of a First Amendment retaliation claim. Plaintiff argues that she was terminated in response to a grievance she filed regarding Diebel. See Am. Compl. at 9–10. Plaintiff states that she submitted this grievance because she "had

10

requested time off for religious purposes" and the request was denied by Diebel. Id. This is precisely the kind of "matters of personal interest" used to "to protect [a plaintiff's] own rights" that cannot form the basis of a retaliation claim. Grillo, 291 F.3d at 235.

The Court recognizes that the Second Circuit has stated "that when a public employee's speech regards the existence of discrimination in the workplace, such speech is a matter of public concern." Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 125 (2d Cir. 2005). However, this Circuit has also emphasized that a plaintiff's speech used "to protect [her] own rights" is not a matter of public concern. Grillo, 291 F.3d at 235. In those instances in which courts in this Circuit have sustained a First Amendment retaliation claim based discrimination, the facts in those cases are rather different from this case. In those cases, a public employee spoke about discrimination in a way that extended beyond merely protecting the employee's own rights. See, e.g., Lewis v. New York City Transit Auth., 12 F. Supp. 3d 418, 457 (E.D.N.Y. 2014) (refusing to grant summary judgment where a plaintiff "spoke with the media about the Transit Authority's allegedly discriminatory policy concerning khimars [a religious covering used by certain Muslim communities]"); Feingold v. New York, 366 F.3d 138, 160 (2d Cir. 2004) (finding that a plaintiff had made a statement of public concern where "he reported widespread racism and anti-Semitism, inadequate training, and unjustified judicial delay" which "suggest[ed] that the fairness and impartiality of the MNO may have been compromised, and that the MNO suffered from delay due to the failure of other ALJs to work full days"); Mandell v. County of Suffolk, 316 F.3d 368, 383 (2d Cir.2003) (holding that a plaintiff's committee testimony criticizing a police department's "systemic racism and anti-Semitism . . . are clearly matters of public concern"). This is not the case here. Plaintiff's grievance was solely based on a desire to preserve her own personal rights, which, on its own, cannot serve as a matter of public

11

concern under this Circuit's law. The Court therefore grants summary judgment in favor of Diebel on the First Amendment retaliation claim.

### E. Title VII Discrimination

Defendants turn next to Plaintiff's Title VII religious discrimination claim against UCS, arguing that Plaintiff cannot meet two of the prima facie elements. Mot. at 23–27. Plaintiff alleges that UCS engaged in religious discrimination by terminating Plaintiff's employment in response to Plaintiff's requests for time off to "travel to India . . . for religious purposes." Am. Compl. at 10. Plaintiff further states that that Mancino told Plaintiff, "I don't care for your religion or spirituality; you are not going to get this kind of time off again" several months before Plaintiff was fired. Id. One month before Plaintiff was fired, Mancino allegedly asked Plaintiff if she "go[es] home to pray because [she] want[s] or [has] to." Id. at 11.

Title VII specifies that an employer may not "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of unlawful employment discharge based on religious discrimination, a plaintiff "must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the position or is performing his duties satisfactorily; (3) he suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent." Nidzon v. Konica Minolta Bus. Sols., USA, Inc., 752 F. Supp. 2d 336, 348 (S.D.N.Y. 2010) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

Defendants do not challenge the first element—that Plaintiff is a member of a protect class. See Mot. at 25–27. Defendants do argue, however, that Plaintiff cannot meet the second

element: satisfactory job performance. Defendants state that the evidence they have produced "reflects that Plaintiff, due to her medical condition, was unable to perform the essential functions of her position as senior court office assistant, and that the accommodations being provided to her were unduly burdening the operations of the clerk's office." Mot. at 25. Yet Plaintiff challenges these very assertions, arguing that she adequately fulfilled the roles assigned to her and that the accommodations were in no way burdensome. See RSMF ¶¶ 21–24, 38–41, 50–53. Given this clear discordance among the parties, the Court cannot find that there is no genuine factual dispute as to the second element of a Title VII claim.

Defendants do not challenge the third element—that Plaintiff suffered adverse employment action. See Mot. at 25–27. Yet Defendants contend that Plaintiff cannot meet the final element: evidence of circumstances giving rise to an inference of discriminatory intent. Id. Under this Circuit's case law,

> "No one particular type of proof is required to show that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination." An inference of discrimination can be drawn from circumstances such as "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's adverse employment action."

St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 309 (E.D.N.Y. 2014) (quoting Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001)). Defendants invoke this Circuit's "stray remarks" doctrine to explain away the alleged statements made by Mancino. Mot. at 25. That doctrine holds that "the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination." Abdu–Brisson, 239 F.3d at 468. Yet the Second Circuit has also made clear that if "other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a

13

more ominous significance." Id. (quoting Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998)).

The stray remarks doctrine does not save UCS. Here, there are "other indicia of discrimination" that indicate that Mancino's comments "bear a more ominous significance." Id. Specifically, Mancino's comments—"I don't care for your religion or spirituality; you are not going to get this kind of time off again," Am. Compl. at 10—seem to indicate that some sort of action would be taken in the future towards Plaintiff. And given that this comment was made in rather close temporal proximity to Plaintiff's firing, the "the sequence of events leading to the plaintiff's adverse employment action" could be seen as "giving rise to an inference of discrimination." St. Juste, 8 F. Supp. 3d at 309. Finally, that Mancino allegedly made another derogatory comment one month before Plaintiff's termination provides further indicia of discrimination. Thus, the question of whether there is an inference of discriminatory intent is best left to be answered by a jury and not this Court.

In summary, because Defendants fail to win on at least one the Title VII religious discrimination elements at this juncture, the Court denies Defendants' request for summary judgment on this claim.

### F. Procedural Due Process

Finally, Defendants argue that Plaintiff's procedural due process claim cannot meet the required legal standards. Mot. at 30–35. Plaintiff argues that she "was immediately terminated without any due process or any two week notice and immediately taken off the payroll and [her] medical benefits were terminated by February 5th, 2019." Am. Compl. at 6. Plaintiff further states that pursuant to her Civil Service Employees Association ("CSEA") contract, she "should

14

have been kept on the payroll with benefits" and her termination "held in abeyance" until an administrative hearing was held. Id.

As this Court stated in its October 2021 MDO, a due process violation requires a two-step inquiry: "First the Court determines whether the plaintiff possessed a liberty or property interest and, if so, determines what process the plaintiff was due before she could be deprived of that interest." Oct. 2021 MDO at 6 (citing Ciambriello v. Cty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002)).

Defendants first argue that they were not involved in the decision to terminate Plaintiff and were also uninvolved in the decision to not hold Plaintiff's termination in abeyance. Mot. at 30–31. Defendants correctly point to case law holding that "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). Defendants go on to argue that the "Individual Defendants did not directly participate in the [alleged due process] violation" because they were not the ones who decided to terminate Plaintiff, nor were they the ones who decided against holding Plaintiff's termination in abeyance and keeping Plaintiff on the payroll. Mot. at 31. Defendants are correct that the Individual Defendants were not personally involved in the decision to not hold Plaintiff's termination in abeyance and keep Plaintiff on the payroll, as Plaintiff does not provide any evidence or allegations that the Individual Defendants were personally involved in such decisions. See generally Am. Compl; RSMF; Resp. Thus, the failure to hold the termination in abeyance or keep Plaintiff on the payroll cannot form the basis of a due process violation against the Individual Defendants.

Yet as this Court articulated in its October 2021 MDO, Plaintiff has provided allegations that Mancino and Lee were involved in the termination. Oct. 2021 MDO at 7 ("Plaintiff presents circumstantial evidence that Mancino and Lee were involved in her termination. Plaintiff alleges that in late 2018 she requested time off from Lee; that Mancino was consulted about the request, Resp at 6; that, after receiving only four days off, Plaintiff filed a grievance; and that shortly thereafter on January 7, 2019, Plaintiff's employment was terminated.") (citations omitted). Furthermore, Plaintiff states that Diebel was present at Plaintiff's termination meeting and served as Plaintiff's supervisor, see Am. Compl. at 4–5, thus indicating that Diebel also played a role in the termination. To the extent that the Individual Defendants disagree with this characterization of their involvement, this is a dispute best reserved for a fact-finding jury and not this Court.

Defendants next argue that Plaintiff cannot establish a constitutionally protected property interest. Mot. at 31–33. "Property interests are not created by the Constitution, but instead, are created and defined by existing rules or understandings 'stemming from an independent source,' which source supports a 'legitimate claim of entitlement.'" Barnes v. Pilgrim Psychiatric Ctr., 860 F. Supp. 2d 194, 201 (E.D.N.Y. 2012) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Considering the Individual Defendants were not personally involved in the hearing abeyance and payroll determinations, the only basis that Plaintiff can make for a protected property interest with respect to the Individual Plaintiffs is an interest in continued employment. Generally speaking, courts in this Circuit have found that "[a] public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002) (citation omitted). Yet here, Plaintiff has not provided any evidence that she was guaranteed employment absent just cause. In fact, Plaintiff provides no evidence whatsoever

16

that any sort of contractual agreement, or that any particular portion of New York law, guarantees her employment. See generally Am. Compl.; RSMF; Resp. Thus, Plaintiff cannot establish that she has a property interest in continued employment "stemming from an independent source, which source supports a legitimate claim of entitlement." Barnes, 860 F. Supp. 2d at 201.

In summary, Plaintiff cannot show that the Individual Defendants were personally involved in the decision to not hold Plaintiff's termination in abeyance and keep Plaintiff on the payroll. Furthermore, Plaintiff cannot establish that she had a constitutionally protected property interest in continued employment with respect to the Individual Defendants. As such, the Court grants Defendants' request for summary judgment on the procedural due process claim.

V.     **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 125) is **GRANTED in part**, with respect to Plaintiff's state law claims, procedural due process claim against the Individual Defendants, stigma-plus claim against the Individual Defendants, and retaliation claim under the First Amendment against Diebel; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 125) is **DENIED in part**, with respect to the Title VII discrimination claim against UCS; and it is further

**ORDERED**, that Plaintiff's state law claims, procedural due process claim against the Individual Defendants, stigma-plus claim against the Individual Defendants, and retaliation claim under the First Amendment against Diebel are **DISMISSED**; and it is further

**ORDERED**, that Defendants Anthony Mancino, Lauren Lee, and Beth Diebel are **DISMISSED** from this action; and it is further

**ORDERED,** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   January 31, 2024
         Albany, New York

LAWRENCE E. KAHN
United States District Judge