**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RAJNI GANDHI,

                Plaintiff,

   v.                                           1:20-cv-00120 (AMN/DJS)

NEW YORK STATE UNIFIED COURT SYSTEM
*et al.*,

                Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

**RAJNI GANDHI**
60 Indian Pipe Drive
Wynantskill, New York 12198
Plaintiff, *pro se*

**HON. LETITIA JAMES**                     **JORGE A. RODRIGUEZ, ESQ.**
New York State Attorney General          **LELA M. GRAY, ESQ.**
The Capitol
Albany, New York 12224
*Attorneys for Defendant*

**Hon. Anne M. Nardacci, United States District Judge:**

<div align="center">

**MEMORANDUM-DECISION AND ORDER**

</div>

**I.     INTRODUCTION**

Presently before the Court is a motion by Rajni Gandhi ("Plaintiff") seeking reconsideration of the Court's October 16, 2024 Memorandum-Decision and Order, Dkt. No. 152 ("Prior Order"). Dkt. Nos. 157-158 ("Motion"). The New York State Unified Court System ("Defendant") opposes the Motion. Dkt. No. 159. For the reasons set forth below, the Motion is denied.

## II.  BACKGROUND[1]

The Court detailed the factual background and procedural history of this action in the Prior Order, and incorporates that detail by reference. Dkt. No. 152. The Court nonetheless provides the following summary for convenience.

### A. Plaintiff's Employment and Termination

Plaintiff was employed by Defendant from April 2001 until January 2019. *Id.* at 3.[2] She worked as a Senior Court Office Assistant in the Albany City Court. *Id.* A significant portion of her responsibilities involved retrieving, refiling, carrying, and moving court case files. *Id.* at 3-4.

In or about April 2017, Plaintiff informed Defendants that she had a physical condition that limited her ability to physically handle files. *Id.* at 5. Plaintiff submitted documentation from medical professionals stating that she should be restricted from filing. *Id.* Plaintiff's co-workers subsequently performed her filing responsibilities. *Id.*

Defendant requested and received additional information from Plaintiff's physician regarding her continuing physical limitations over time[3] and, in late 2018, again requested updated information from Plaintiff's physician. *Id.* at 5-6, 10. In December 2018, Plaintiff's physician stated that Plaintiff should continue with the work restrictions he had communicated previously, and that "[t]hese work restrictions are permanent restrictions." *Id.* at 10 (citations omitted).

Defendant then met with Plaintiff to discuss her medical condition. *Id.* Plaintiff confirmed

---

[1] The parties' familiarity with the background of this matter is presumed, and only those facts necessary to resolving the Motion are discussed herein.

[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

[3] In late 2017, the president of Plaintiff's union warned Plaintiff that she risked termination if she submitted documentation establishing that she was "a file clerk who can't file." *Id.* at 7 n.7 (citations omitted).

that due to her physical limitations, she would continue to require the level of assistance provided by her co-workers. *Id.* Plaintiff asked to be reassigned to a position that did not require filing. *Id.* Defendant informed Plaintiff that there were no other assignments available for her current position and pay level. *Id.*

Later that month, and after further consultation with Defendant's Office of Labor Relations ("Labor Relations"), Defendant's District Executive for the Third Judicial District ("District Executive") made a detailed written recommendation to Defendant's Deputy Chief Administrative Judge for Courts Outside of New York City ("Deputy Chief"). *Id.* at 11. The District Executive recommended that Defendant terminate Plaintiff as an incapacitated employee under the relevant collective bargaining agreement ("CBA"). *Id.*

In January 2019, the Deputy Chief issued a letter terminating Plaintiff on the grounds that:

> You have been unable to perform the full duties of your position for over one year, during which time your position has been substantially modified in order to accommodate your physical (medical) limitations/restrictions. The most recent medical documentation that you provided indicates that these work restrictions are permanent, i.e.[,] you are permanently incapacitated from performing the necessary duties of your position.

*Id.* (citations omitted).

### B. Plaintiff's Annual Leave

Between 2011 and 2018, Plaintiff requested and received three consecutive weeks of annual leave each February in order to travel to India. *Id.* at 4. Plaintiff alleges that these trips were for religious purposes. Dkt. No. 10 at 10; *see also* Dkt. No. 150-2 at 286:8-289:18. In India, Plaintiff testified that she would "attend discourses given by the teacher there[,]" "meditate[,]" and "help. . . . with, you know, the check-in process" at the hostel where she stayed. Dkt. No. 152 at 4 (citation omitted).

During September and October 2018, Plaintiff requested approximately seven weeks of

annual leave during 2019, including February 4 through March 1, 2019. *Id.* at 8.

In October 2018, after consulting with Labor Relations, Defendant approved all of Plaintiff's requests, except the nearly four consecutive weeks Plaintiff requested in February and March 2019. *Id.* Defendant instead approved February 4 until February 13 and explained to Plaintiff that the partial approval was "[d]ue to the operational needs of the court. . . . as we are short-handed, have one new employee who is still being trained[,] and one starting in a few week[s] who will need to be trained." *Id.* at 8-9 (alterations in original) (citations omitted).

In November 2018, Plaintiff filed a grievance with Defendant through her union, claiming that the partial approval of her annual leave request violated the CBA because:

> [Plaintiff] is the highest seniority in her title in the Albany City Criminal Court. She [r]equested [l]eave for February 2019 and was denied some of the dates based on the operating needs. Based on her title and responsibilities, we do not agree that the operating needs warrant her annual leave denial.

*Id.* at 10 (alterations in original) (citation omitted).

In December 2018, Defendant denied Plaintiff's grievance, in part because the "operational needs of the court due to staffing shortages will not allow for an employee of Albany City Court, Criminal Part, to have over a week of annual leave during February [2019]." *Id.* at 10-11 (alteration in original) (citation omitted).

### C. Procedural History

In January 2019, Plaintiff administratively appealed her termination.[4] *Id.* at 11-12. The hearing officer for the appeal recommended that Plaintiff's termination be upheld and found as follows:

> [I]t is undisputed that: (1) the position of Senior Court Office Assistant entails a significant amount of filing; (2) [Plaintiff]'s doctors advised that she was unable to

---

[4] Plaintiff was represented by counsel for the attendant evidentiary hearing and related briefing. *Id.* at 12.

> perform the job duty of filing due to a degenerative spinal condition and that [Plaintiff]'s work restrictions were permanent; (3) [Plaintiff] repeatedly requested assistance with her filing duties; (4) [Plaintiff]'s doctors never requested any accommodations which would allow [Plaintiff] to perform her job duties, other than a lightweight headset;[5] and (5) the accommodations provided to [Plaintiff] (that is, filing assistance from her supervisors and co-workers) for the period of November 2017 through January 2019 were a burden on court operations. Given the foregoing, the evidence demonstrated that [Plaintiff] was unable to perform the full duties of her position for a period of over one year and that [Plaintiff]'s work restrictions were permanent. Therefore, in accordance with [the relevant provision] of the CBA, [Plaintiff]'s termination was appropriate.

*Id.* at 12 (penultimate alteration added) (citation omitted). Defendant's Deputy Chief concurred with the hearing officer's analysis and recommendation, concluding that "the evidence established that [Plaintiff] suffers from a disability, and that such disability incapacitated [Plaintiff] from performing the essential duties of her positions from April, 2017 through at least December, 2018, when [Plaintiff]'s work restrictions were deemed to be permanent," and denied Plaintiff's appeal. *Id.* (alterations in original) (citations omitted).

In January 2019, Plaintiff also filed a complaint with the New York State Division of Human Rights ("NYSDHR"). *Id.* at 12-13. After an investigation, the NYSDHR dismissed the complaint, concluding that "[w]hile [Plaintiff]'s burden at this stage is considered de minimis, [s]he must produce some evidence, beyond conclusory assertions, showing circumstances sufficient to support an inference of discriminatory intent. [Plaintiff]'s own subjective belief, absent further proof, is insufficient to support a finding of discrimination." *Id.* at 13 (second, third, and fourth alterations in original) (citations omitted). Plaintiff also filed a charge with the United States Equal Employment Opportunity Commission, which adopted the findings of the NYSDHR and dismissed the charge. *Id.*

In April 2019, Plaintiff filed a second grievance through her union, this one in connection

---

[5] As the Prior Order noted, Defendant provided this accommodation. *Id.* at 12 n.10.

with her termination. *Id.* In the subsequent arbitration,[6] the arbitrator determined—as a procedural matter pursuant to a particular provision of the CBA—that Plaintiff's termination should have been held in abeyance until the Deputy Chief's final determination. *Id.* The arbitrator awarded Plaintiff back pay and commensurate benefits for the period between her termination and the Deputy Chief's final determination, an amount Defendant has paid to Plaintiff. *Id.* at 13-14.

Plaintiff also initiated an Article 78 proceeding in New York State Supreme Court in connection with her termination, a proceeding that was eventually dismissed. *Id.* at 14.

In the instant matter, the Court (Kahn, J.)[7] previously granted Defendant's motion for summary judgment, except as to Plaintiff's religious discrimination claim against Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Dkt. No. 134. This claim was analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 12-14. That analysis was conducted without the benefit of the Second Circuit's subsequent decisions in *Bart v. Golub Corp.*, 96 F.4th 566, 575 (2d Cir. 2024) ("We take this opportunity to demystify the third-stage burden under *McDonnell Douglas*, which has admittedly not always been articulated in our case law with the utmost clarity[.]") and *King v. Aramark Services Inc.*, 96 F.4th 546, 565 (2d Cir. 2024) (finding a genuine dispute of material fact at the third-stage precluded summary judgment on plaintiff's Title VII claims). As a result, this Court requested supplemental briefing on the issue. Dkt. No. 146. Defendant then moved for summary judgment, Dkt. 147, which Plaintiff, represented by counsel,

---

[6] Plaintiff was also represented by counsel in this proceeding. Dkt. No. 125-8 at 6.

[7] This case was reassigned to the undersigned on April 10, 2024. Dkt. No. 141. The Court appointed Plaintiff *pro bono* counsel soon after, Dkt. No. 142, and later terminated that appointment following the entry of judgment, Dkt. No. 154.

6

opposed, Dkt. No. 150.[8]

### D. Prior Order

At step one of the *McDonnell Douglas* analysis, the Court found that Plaintiff had satisfied her burden to establish a *prima facie* case of religious discrimination. Dkt. No. 152 at 17.

At step two, with minimal opposition from Plaintiff's counsel, the Court found that Defendant had satisfied its burden with respect to both Plaintiff's partially approved leave request and her subsequent termination. *Id.* at 17-18. Defendant's proffered nondiscriminatory reasons were, in summary, that Plaintiff's nearly four consecutive weeks of annual leave would strain its already short-staffed operations and that her permanent medical condition rendered her unable to perform the essential functions of her position without unduly burdensome accommodations. *Id.* at 17-18.

At step three, the Court found that Plaintiff had not met her burden, because she had "failed to provide 'admissible evidence . . . show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer' that Defendant's stated reasons for partially approving Plaintiff's seven-week annual leave request and for terminating her as an incapacitated employee under the CBA were 'more likely than not based in whole or in part on discrimination.'" *Id.* at 22 (alterations in original) (quoting *Bart*, 96 F.4th at 576).

The Court granted Defendant's motion for summary judgment as a result. *Id.*

### III. STANDARD OF REVIEW

As a general matter, a "motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding

---

[8] Both parties relied on their prior statements of material facts. Dkt. No. 147-1 at 4; Dkt. No. 150 at 4.

authority." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). "Accordingly, the standard for granting a motion for reconsideration is 'strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

More specifically, a court "may grant a Rule 59(e) motion only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (alteration in original) (internal quotations omitted) (first quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013); and then citing *Hollander v. Members of the Bd. of Regents of the Univ. of N.Y.*, 524 F. App'x 727, 729 (2d Cir. 2013)).

Similarly, "Rule 60(b) is a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances." *Pelczar v. Pelczar*, 833 F. App'x 872, 876 (2d Cir. 2020) (internal quotations omitted) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). Rule 60(b) provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Whether to grant a Rule 60(b) motion "is committed to the 'sound discretion'

8

of the district court[.]" *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citation omitted).

Finally, the Court remains mindful that "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## IV. DISCUSSION

Even construing Plaintiff's *pro se* submission liberally,[9] the Court agrees with Defendant that the Motion "fails to raise any grounds warranting reconsideration." Dkt. No. 159 at 3.

### A. Claims Not Addressed in the Prior Order

The Prior Order addressed only Plaintiff's Title VII religious discrimination claim against Defendant. *See generally* Dkt. No. 152. Yet much of Plaintiff's Motion expressly relitigates other claims that were addressed long before the Prior Order. *See, e.g.,* Dkt. No. 157 at 3-6, 14, 16-19; *id.* at 7 (arguing that "I have sufficiently established religious discrimination, disability discrimination and technically other claims which I have alleged"). Defendant is correct that these claims are not properly before the Court for reconsideration. Dkt. No. 159 at 5-6. Additionally, Plaintiff already moved for reconsideration when Judge Kahn partially granted a defendant's motion to dismiss in September 2021, Dkt. Nos. 50, 55; moved for reconsideration again when Judge Kahn partially granted a second defendant's motion to dismiss in October 2021, Dkt. No.

---

[9] While Plaintiff does not ground her request for reconsideration in any specific Federal Rule of Civil Procedure, *see* Dkt. Nos. 157-158, the Court interprets the Motion as requesting reconsideration under both Rule 59(e) and Rule 60(b).

56, 64; and moved for reconsideration once more following the denial of her request to further amend her Amended Complaint in January 2023, Dkt. Nos. 111, 116. All of these requests were considered and adjudicated years ago. Dkt. Nos. 77, 117. And, somewhat more recently, Plaintiff declined to seek reconsideration after Judge Kahn partially granted Defendant's motion for summary judgment in January 2024. Dkt. No. 134. To the extent that the Motion seeks reconsideration of earlier orders relating to Plaintiff's previously adjudicated claims, it is procedurally improper. *Shaughnessy v. Garrett*, No. 06-cv-103, 2011 WL 1213167, at *1 (N.D.N.Y. Mar. 31, 2011) ("[A] motion for reconsideration is not a substitute for an appeal.") (denying motion for reconsideration by *pro se* plaintiff).

Any such request is also untimely by at least months, if not years. *Wilson v. Hilton*, No. 20-cv-1489, 2024 WL 510286, at *3 (N.D.N.Y. Feb. 8, 2024) ("Under our Local Rules, a movant must seek reconsideration promptly; *i.e.*, within fourteen days of the challenged order.") (citation omitted). In any event, Plaintiff identifies no valid basis to warrant reconsideration of her previously adjudicated claims. *Id.* at *3 ("Reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.") (internal quotations omitted) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *Wright v. Martin, Harding & Mazzotti, LLP*, No. 22-cv-515, 2024 WL 2399906, at *2 (N.D.N.Y. May 23, 2024) ("[A] motion for reconsideration should not be granted if the moving party 'seeks solely to relitigate an issue already decided.'") (first quoting *Shrader*, 70 F.3d at 257; and then citing *Lichtenberg v. Besicorp Grp., Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002)).

### B. Change of Controlling Law or New Evidence

To the extent the Motion's arguments concern the Prior Order itself, Plaintiff does not


identify any intervening change of controlling law. *Metzler*, 970 F.3d at 142.

Plaintiff also identifies no new evidence. *Id.* While she submits the CBA as well as the arbitral opinion and award, neither document is new. Dkt. Nos. 158-1, 158-2. Indeed, the Prior Order discussed and cited the CBA, *see, e.g.,* Dkt. No. 152 at 10 (citing, *inter alia*, Dkt. No. 125-2 at 23-169), and also discussed the arbitration and cited the arbitral opinion and award, *id.* at 13-14 (citing, *inter alia*, Dkt. No. 125-8 at 30). Plaintiff identifies no overlooked portions of the CBA or the arbitral opinion and award, nor any error in the Prior Order's discussion of these documents or the related proceedings. Regardless, both documents "were available to plaintiff when the motion for summary judgment was filed, and are therefore not 'new evidence' for purposes of a motion for reconsideration." *Bradshaw v. Fletcher*, No. 19-cv-0428, 2022 WL 22889197, at *11 (N.D.N.Y. Feb. 7, 2022) (first citing *Cho v Blackberry Ltd.*, 991 F.3d 155, 170-71 (2d Cir. 2021); and then citing *LaSalle Bank Nat'l Ass'n v. Capco Am. Securitization Corp.*, No. 02-cv-9916, 2006 WL 177169, at *2 (S.D.N.Y. Jan. 25, 2006)).

Nevertheless, the Court briefly addresses Plaintiff's continued reliance on these documents. As detailed in the Prior Order, Plaintiff filed two grievances through her union. The first related to the partial approval of Plaintiff's annual leave request. Dkt. No. 152 at 10 ("[Plaintiff] is the highest seniority in her title in the Albany City Criminal Court. She [r]equested [l]eave for February 2019 and was denied some of the dates based on the operating needs. Based on her title and responsibilities, we do not agree that the operating needs warrant her annual leave denial.") (alterations in original) (citing Dkt. No. 125-2 at 184-85). The second related to Plaintiff's termination. *Id.* at 13-14 (citing, *inter alia*, Dkt. No. 125-9 at ¶ 117); *see also* Dkt. No. 125-9 at ¶ 117 ("[Plaintiff] also filed a contract grievance alleging that [Defendant] had violated Section 9.3(h) of the CBA, when it failed to afford her due process prior to her termination.")

(citations omitted).  While each grievance could provide evidence of Defendant's contractual compliance with the CBA, neither provides evidence of religious discrimination.  So too with the arbitration, where the stipulated issue was "[d]id the Employer violate Section 9.3(h) of the parties' collective bargaining agreement when it failed to hold the Grievant's termination in abeyance until a final determination was made by the appropriate Deputy Chief Administrative Judge?  If so, what shall be the remedy?"  Dkt. No. 125-8 at 8; *see also* Dkt. No. 152 at 13-14.  In short, the Prior Order appropriately considered the CBA, Plaintiff's grievances, the arbitration, and the opinion and award in finding that Defendant was entitled to summary judgment on Plaintiff's Title VII claim for religious discrimination.  Plaintiff's arguments to the contrary remain unsupported by the factual record, and the Motion provides no new evidence to reach a different conclusion.  *Farrar v. Danziger*, No. 21-2324-cv, 2022 WL 5239542, at *1 (2d Cir. Oct. 6, 2022) (summary order) ("To prevail on a motion for relief from a judgment on the grounds of newly discovered evidence under either Rule 59(e) or Rule 60(b), [the plaintiff] needed to show, among other things, that there was newly discovered evidence, that she had been 'justifiably ignorant' of the new facts 'despite due diligence,' and that the evidence was admissible and would have likely changed the outcome.") (quoting *Metzler*, 970 F.3d at 146-47).

### C.  Clear Error, Manifest Injustice, or Exceptional Circumstances

The Motion also identifies no "clear error" or "manifest injustice" in the Prior Order, *Metzler*, 970 F.3d at 142 (citations omitted), nor any "exceptional circumstances" that could justify reconsideration, *Pelczar*, 833 F. App'x at 876 (citation omitted).

Instead, Plaintiff's primary contention is that her religious discrimination claim should have survived summary judgment because she established a *prima facie* case at the first step of the *McDonnell Douglas* framework.  *See, e.g.,* Dkt. No. 157 at 7, 14-15, 17-19.  But the Prior Order

based summary judgment on the third step of that framework. Dkt. No. 152 at 17-22. And as to that step, neither Plaintiff now, nor her counsel previously, "satisfied her burden to establish that Defendant's stated reasons for partially approving her annual leave or for terminating her are pretextual, nor that religious discrimination was a motive in either decision." *Id.* at 18; *see also Bart*, 96 F.4th at 576. Given the particular facts of this case, Plaintiff's limited showing at step one was also not "independently sufficient under step three of *McDonnell Douglas*" to survive summary judgment. *Bart*, 96 F.4th at 576 (citing *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)); *see also St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 310 (E.D.N.Y. 2014) ("[A] plaintiff's own subjective belief that he was discriminated against because of his religion is insufficient to sustain a religious discrimination claim.") (collecting cases); Dkt. No. 152 at 13 ("While [Plaintiff]'s burden at this stage is considered de minimis, [s]he must produce some evidence, beyond conclusory assertions, showing circumstances sufficient to support an inference of discriminatory intent. [Plaintiff]'s own subjective belief, absent further proof, is insufficient to support a finding of discrimination.") (alterations in original) (citations omitted).

Plaintiff relatedly contends that Defendant's discriminatory intent should be a question of fact for the jury. *See, e.g.,* Dkt. No. 157 at 1, 3, 17. This argument was already made to the Court by her counsel, Dkt. No. 150 at 7-10, and addressed in the Prior Order, Dkt. No. 152 at 17-22. *See also Wright*, 2024 WL 2399906, at *2 ("[A] motion for reconsideration is not an opportunity for the moving party 'to argue those issues already considered when a party does not like the way the original motion was resolved[.]'") (quoting *Lichtenberg*, 28 F. App'x at 75). As Defendant notes, Plaintiff's renewed argument consists of "speculative and conclusory statements without any reference to the record." Dkt. No. 159 at 6. Such argument provides no basis for reconsideration. *Cf. Shabazz v. Howard*, No. 23-6471, 2024 WL 2952351, at *4 (2d Cir. June 12, 2024) (summary

13

order) (finding that "[t]hese 'conclusory' allegations, made on [the plaintiff]'s own 'information and belief' and without 'a statement of clear and convincing probative facts which support such belief,' are insufficient" for reconsideration and affirming district court's denial of motion for reconsideration under Rules 59 and 60(b) by *pro se* plaintiff) (quoting *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989)).

Even if considered, this argument remains unpersuasive given the summary judgment record in this case. *See, e.g., Khazin v. City of New York*, No. 24-1236-cv, 2025 WL 1091241, at *1 (2d Cir. Apr. 8, 2025) (summary order) ("The party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation.'") (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)) (affirming district court's grant of summary judgment to defendants on Title VII claim); *Browne v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 24-734, 2025 WL 1177958, at *1 (2d Cir. Apr. 23, 2025) (summary order) ("A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' . . . '[U]nsupported allegations do not create a material issue of fact.'") (quoting *Weinstock v. Columb. Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)) (affirming district court's grant of summary judgment to defendants on Title VII claim).

Relatedly, Plaintiff appears to take issue with the Court's observations in the Prior Order that "[t]here is no evidence in the record" that Plaintiff raised various alleged discriminatory "comments with Defendant, her union, or anyone else prior to the termination of her employment[,]" or in numerous proceedings related to her termination. *See, e.g.*, Dkt. No. 152 at 8, 11, 14. The Motion does not argue that there is such evidence; instead, the Motion offers various explanations for why Plaintiff did not raise such comments. *See, e.g.*, Dkt. No. 157 at 7, 9-10.

Plaintiff's purported reasons for not previously raising these alleged comments are not the issue. The issue, as the Court observed in the Prior Order, is that the alleged comments are unsupported by other evidence, including the fact that Plaintiff did not raise the comments or introduce any evidence as to them when she challenged Defendant's conduct twice through her union or through counsel in two separate proceedings. *See also supra* Section II.B-C.

Nevertheless, for purposes of summary judgment, the Court presumed that the alleged comments were made.[10] Dkt. No. 152 at 19-21. But the summary judgment record established that the alleged speaker was not Plaintiff's direct supervisor, was not involved in the decision to partially approve Plaintiff's annual leave request in October 2018, and was not involved in the decision to terminate Plaintiff in January 2019. *Id.* While Plaintiff objects to these findings, the Motion offers no valid basis to revisit them. As Defendant correctly notes, "there still remains a lack of admissible proof that [the speaker] was involved in making any of the key decisions that led to the adverse employment actions." Dkt. No. 159 at 9; *see also Johnson v. L'Oréal USA*, No. 21-2014-cv, 2023 WL 2637456, at *5 & n.3 (2d Cir. Mar. 27, 2023) (summary order) (affirming "the district court's conclusion that summary judgment on [the plaintiff]'s [ ] discrimination claims is warranted because no reasonable jury could find on this evidentiary record that [the defendant]'s non-discriminatory reasons for firing [the plaintiff] were pretextual" and noting that "'stray remarks in the workplace by persons who are not involved in the pertinent decisionmaking process' are insufficient") (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 162 (2d Cir. 1998)).

---

[10] The Court also presumed that additional comments Plaintiff's counsel identified, purportedly made by other individuals sometime prior to March 2018, were made. Dkt. No. 152 at 16, 19 n.11, 21 n.12. To the extent that these additional comments constituted admissible evidence, the Court found them to be, at best, stray remarks. *Id.* at 19 n.11, 21 n.12; *see also Naumovski v. Norris*, 934 F.3d 200, 216 (2d Cir. 2019) ("As we have observed, 'stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination.'") (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)).

The Prior Order thus determined that various purported comments were, on their own, insufficient to demonstrate discriminatory intent. *See, e.g.,* Dkt. No. 152 at 19 (citing *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019)); *see also Lenzi*, 944 F.3d at 112 ("[S]tray remarks, '*without more*, cannot get a discrimination suit to a jury[.]'") (quoting *Danzer*, 151 F.3d at 56); *Bramble v. Moody's Corp.*, No. 23-506, 2024 WL 705955, at *3 (2d Cir. Feb. 21, 2024) (summary order) ("As the district court appropriately found, however, this [remark] was unconnected to any purported adverse employment decision and is therefore insufficient to demonstrate discriminatory intent.") (collecting cases); *Bentley-Ammonds v. Northwell Health, Inc.*, No. 21-835-cv, 2022 WL 893716, at *2 (2d Cir. Mar. 28, 2022) (summary order) ("As we have explained, 'the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination.'") (citations omitted). Given the absence of admissible evidence with respect to Defendant's alleged discriminatory intent, the Prior Order concluded that Plaintiff had failed to carry her burden at the third step of the *McDonnell Douglas* analysis. Dkt. No. 152 at 22. The Motion provides no valid basis to reconsider that determination.

Plaintiff's remaining arguments are similarly unpersuasive. *See, e.g., Wright*, 2024 WL 2399906, at *2; *Wilson*, 2024 WL 510286, at *3 . The Court also agrees with Defendant that the Motion does not actually challenge numerous central findings in the Prior Order. Dkt. No. 159 at 8-10.

For all the reasons stated above, the Motion is denied. *Van Buskirk*, 935 F.3d at 54; *Commerzbank*, 100 F.4th at 377.

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion for reconsideration, Dkt. No. 157, is **DENIED**; and the

Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.[11]

**IT IS SO ORDERED.**

Dated: September 9, 2025
Albany, New York

*Anne M. Nardacci*
Anne M. Nardacci
U.S. District Judge

---

[11] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein.